Certiorari Denied, July 30, 2012, No. 33,699

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-094**

**Filing Date: June 7, 2012**

**Docket No. 30,675**

**STATE OF NEW MEXICO,**

     **Plaintiff-Appellee,**

**v.**

**JOE ANAYA,**

     **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Steven L. Bell, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**GARCIA, Judge.**

**{1}** Defendant Joe Anaya was convicted of driving while intoxicated (DWI), contrary to NMSA 1978, Section 66-8-102 (2007) (amended 2010), and other driving related offenses during a bench trial. At trial, the State introduced a copy of his breath alcohol test results from the Intoxilyzer 5000 breathalyzer machine (IR 5000). On appeal to this Court,

1

Defendant asserts that the district court erred in denying his motions to suppress the IR 5000 breath test results because: (1) the Confrontation Clause mandates that Defendant have the opportunity to cross-examine a witness regarding the underlying science and the accuracy of the IR 5000, and (2) the breath test was obtained in violation of the Implied Consent Act, NMSA 1978, § 66-8-109(B) (1993). Defendant also argues that any incriminating statements he made while under arrest should have been suppressed because Defendant was not informed of his right to remain silent pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). We affirm.

**BACKGROUND**

**{2}** Officer O'Brien stopped Defendant's car for failure to use a turn signal. Officer O'Brien noticed that Defendant's breath had an odor of alcohol and asked Defendant for his driver's licence, proof of insurance, and registration. Defendant responded that he did not have a driver's licence, and Officer O'Brien learned that Defendant's license had been revoked with an arrest clause. As a result, Officer O'Brien placed Defendant under arrest.

**{3}** A second officer, Officer Stevenson, arrived on the scene as Officer O'Brien was escorting Defendant to the back of her patrol car. Officer Stevenson observed that Defendant had slurred speech and bloodshot watery eyes, was slow in entering the back seat of Officer O'Brien's patrol car, and had an odor of alcoholic beverages on or about his person. Once Defendant was already inside Officer O'Brien's patrol car, Officer Stevenson asked Defendant if he had been drinking. Defendant replied that he had not eaten anything all day and had consumed three beers in the last two hours. The State concedes that at this point Defendant was under arrest and was not provided with *Miranda* warnings. Officer Stevenson then began conducting a DWI investigation. He administered field sobriety tests including a horizontal eye gaze nystagmus test, a one leg stand test, and a walk and turn test. Defendant's performance on the field sobriety tests were recorded by Officer Stevenson's belt tape and the DVD that was admitted at trial at the request of Defendant. After conducting the field sobriety tests, Officer Stevenson arrested Defendant for DWI and read him the Implied Consent Act.

Officer Stevenson initially brought Defendant to a hospital to conduct a blood test, but Defendant was ultimately tested by breath using the IR 5000. Defendant claims that he requested a blood test. Officer Stevenson, who does not remember the incident clearly, does not recall Defendant asking for a second test and asserts that he would have given Defendant a second test if Defendant had requested one. The IR 5000 breath test results indicated that Defendant's blood alcohol level was .11 and .12.

**{4}** Prior to trial, Defendant filed a motion to dismiss the DWI charge claiming that he had been denied his request for a blood test. The district court heard testimony from Officer Stevenson and Defendant and reviewed the audio belt recording of Defendant's field sobriety tests. The district court denied Defendant's motion to dismiss and found that Officer Stevenson did advise Defendant of his right to independent testing under the Implied

2

Consent Act, and Defendant did not request a blood test or additional testing. The district court did, however, grant Defendant's later motion to suppress the breath test results that were based on this Court's decision in *State v. Willie*, 2008-NMCA-030, 143 N.M. 615, 179 P.3d 1223, *rev'd by* 2009-NMSC-037, 146 N.M. 481, 212 P.3d 369. After the New Mexico Supreme Court reversed *Willie*, this Court entered an order vacating its prior opinion and remanded the case to the district court for trial.

**{5}** On remand, defense counsel cited in opening statement the United States Supreme Court decision, *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527 (2009), and asserted that the proper calibration of the machine was not a sufficient foundation to introduce the IR 5000 breath test results. Defense counsel argued that *Melendez-Diaz* now required the opportunity to confront witnesses regarding Defendant's particular test, the operation and calibration of the particular IR 5000 machine used to test Defendant, and the scientific reliability of the IR 5000. Defense counsel also indicated an intent to object to the State's use of Defendant's breath test results on the basis of *Melendez-Diaz*, if the State could not produce an expert witness to testify regarding "what the test actually does, what it actually tests, how it actually operates[,] and whether or not [it is] scientifically reliable."

**{6}** In its case-in-chief, the State called Officers O'Brien, Zavala, and Stevenson. Officer O'Brien testified as to the initial traffic stop. Officer Zavala, the key operator for the IR 5000, testified regarding the certification and calibration procedures for the IR 5000 utilized in Defendant's case, and his belief that the IR 5000 was working properly on the day of Defendant's breath test. Officer Zavala also discussed compliance with the Department of Health's Scientific Laboratory Division (SLD) regulations regarding the calibration and certification of breathalyzers and stated that he had no knowledge of the inner workings of the IR 5000.

**{7}** Officer Stevenson discussed his DWI investigation and the particular circumstances surrounding Defendant's breath test. Officer Stevenson explained that he read Defendant the Implied Consent Act, including the right to an independent chemical test, and took Defendant to a hospital for blood testing. He also testified that he does not remember why he ultimately chose to leave the hospital without conducting the blood test, but there was a "high possibility" that the hospital would have taken too long to conduct a blood test the night of Defendant's DWI arrest. Officer Stevenson further testified that Defendant consented to take a breath test, that he did not remember anything to indicate that Defendant wished to have an additional test performed, and that he would have brought Defendant back to the hospital if Defendant had requested an independent blood test.

**{8}** Officer Stevenson also discussed his certification to administer tests on the IR 5000 and estimated that he had administered approximately two hundred breath tests on the IR 5000 as of the date of Defendant's breath test. The officer discussed the process by which the IR 5000 self-tests and explained that he had no knowledge of the machine's inner workings. Officer Stevenson further discussed the factual circumstances of Defendant's particular test and his belief that the IR 5000 was working properly at the time of the test and

3

that he had properly administered the test to Defendant. Finally, the officer discussed the incriminating statements made by Defendant during the course of his investigation and DWI arrest. Defense counsel did not object to Officer Stevenson's testimony regarding Defendant's incriminating statements the evening of his arrest. Additionally, during cross-examination of Officer Stevenson, defense counsel introduced the DVD of Defendant's field sobriety tests.

{9} When Officer Stevenson testified regarding the IR 5000 read-out containing Defendant's results, defense counsel cited to *Melendez-Diaz* and *Crawford* and objected to the foundation for the breath test results. Additionally, defense counsel cross-examined Officer Stevenson regarding his lack of knowledge of the factors that affect the accuracy and inner workings of the IR 5000. Defense counsel continued this line of questioning during cross-examination of Officer Zavala. Noting that Officer Zavala was not an expert on the machine and did not understand any of the machine's inner workings, Defendant objected to his testimony regarding the IR 5000 on the basis of foundation. No other foundational witnesses were called by the State to testify about the underlying science or reliability of the IR 5000. The district court overruled Defendant's foundational objections and admitted the IR 5000 read-out of Defendant's breath test results.

{10} After the close of the State's case-in-chief, the district court heard testimony from Defendant. Defendant testified that he wanted a blood test but was never given one. Defendant explained that he repeatedly requested a blood test, but Officer Stevenson told him there was not enough time. However, Defendant also explained that he was afraid Officer Stevenson would add to his charges if he pressed the issue. Additionally, when Defendant was asked directly whether he objected to Officer Stevenson taking him out of the hospital without the blood test, he said, "I wanted the blood test because blood does not lie."

{11} During closing argument, defense counsel argued for the first time that Defendant was entitled to be advised of "certain [c]onstitutional [r]ights" once he was placed under arrest. He asserted that this was an "interesting issue as it relates to *Miranda* with DWI's." Defense counsel also again argued that Defendant requested, and was denied, an independent blood test and that the State failed to lay a proper foundation for the admission of the breath test results. Likening the IR 5000 to a "magic box," defense counsel asserted that the facts in this case were even more egregious than the facts of *Melendez-Diaz* to argue that the constitution demands that Defendant have an opportunity to cross-examine an expert knowledgeable about the machine's inner workings and mechanics.

{12} In response, the district court allowed the parties to submit findings of fact and conclusions of law. The district court explained its belief that *Melendez-Diaz* was inapplicable to the present case and the more appropriate challenge was to the reliability of the IR 5000. Additionally, the district court expressed concern that the IR 5000 might not be reliable, but stated that there was not enough scientific testimony presented to make such a determination. The district court did not respond to defense counsel's closing statements

4

regarding the *Miranda* argument.

**{13}** Ultimately, the district court adopted a factual finding that Defendant had not requested a blood test. The district court also found that the IR 5000 was calibrated and working properly on the day of Defendant's breath test, and the test was administered properly. As a result, the district court found Defendant guilty of DWI and other driving related offenses. Defendant timely filed an appeal.

**DISCUSSION**

**I.      The Confrontation Clause**

**{14}** Defendant argues that the district court erred in admitting the IR 5000 results containing operator information, calibration results, and a certification signature by the operating officer. Citing *Crawford v. Washington*, 541 U.S. 36 (2004) and its progeny, Defendant contends that the district court violated his constitutional right to confront the witnesses against him by allowing the introduction of his breath test results without testimony from a witness as to the scientific accuracy and reliability of the IR 5000. Defendant argues that the State should be barred from introducing breathalyzer test results unless a witness testifies to both the reliability of the IR 5000 and whether the proper procedures were followed when the device was used to test Defendant's breath alcohol content. Given the evolving state of the law regarding the Confrontation Clause, we shall briefly review the primary cases relied upon by Defendant and then address the merits of Defendant's argument regarding the foundational requirement for admitting the test results of the IR 5000.

**{15}** The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend VI. In *Crawford*, the initial case that started a shift in modern Confrontation Clause jurisprudence, the United States Supreme Court established a new test for evaluating Sixth Amendment claims, only admitting "testimonial" statements of a witness not present at trial "where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine [the declarant]." 541 U.S. at 59, 61-62 (overruling the decision in *Ohio v. Roberts*, 448 U.S. 56, 66 (1980) which held that evidence with "particularized guarantees of trustworthiness" was admissible notwithstanding the Confrontation Clause). Although the Court did not spell out a comprehensive definition of testimonial evidence, it instructed that "[v]arious formulations of this core class of 'testimonial' statements exist[.]" *Crawford*, 541 U.S. at 51. These formulations, the Court stated, "all share a common nucleus" and are "statements that . . . would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" *Id.* at 51-52 (internal quotation marks and citation omitted).

**{16}** In *Melendez-Diaz*, the United States Supreme Court used a "rather straightforward application" of the new *Crawford* test to conclude that the certificates containing the results

5

of certain tests performed by qualified forensic analysts were testimonial statements that invoke a defendant's Sixth Amendment right to confrontation. *Melendez-Diaz*, 557 U.S. at ___, ___ 129 S. Ct. at 2532, 2533. The United States Supreme Court explained that the certificates were "made for the purpose of establishing or proving some fact" and, therefore, "were functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination." *Melendez-Daiz*, 557 U. S. at __, 129 S. Ct. at 2532 (internal quotation marks and citations omitted). Thus, "[a]bsent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them," the defendant was entitled to confront the analysts at trial. *Id.* Requiring the analysts to be present for confrontation by the defendant "is one means of assuring accurate forensic analysis . . . [and] will deter fraudulent analysis in the first place." *Id.* at ___, 129 S. Ct. at 2536-37.

**{17}** The United States Supreme Court further expanded on the post-*Crawford* Confrontation Clause doctrine in *Bullcoming v. New Mexico*, 564 U.S. ___, 131 S. Ct. 2705 (2011). The Court relied on *Melendez-Diaz* and found that a certified blood-alcohol concentration report which was prepared "solely for an 'evidentiary purpose'" and "made in aid of a police investigation" was testimonial evidence in a DWI case. *Bullcoming*, 564 U.S. at ___, 131 S. Ct. at 2717 (quoting *Melendez-Diaz*, 557 U.S. at ___, 129 S. Ct. at 2532). Defendant seeks to apply this analysis to require a certain foundation for the reliability of the breath test machine as a predicate to admission of the test result. Defendant argues that the court erred in admitting the breath test results without foundational testimony from any witness regarding the scientific accuracy and reliability of the IR 5000, in addition to the testimony received from the two officers.

**A.      Standard of Review**

**{18}** This case has two standards of review. "Questions of admissibility under the Confrontation Clause are questions of law, which we review de novo. Generally, we review the admissibility of evidence . . . for an abuse of discretion." *State v. Gonzales*, 2012-NMCA-___, ¶ 5, ___ P.3d ___ (No. 29, 763, Feb. 16, 2012) (internal quotation marks and citation omitted). First, we must undertake a de novo review of whether the foundational testimony provided by the State was sufficient to satisfy the requirements necessary for the submission of the breath test results produced by the IR 5000. If the foundational requirements have not been met due to a Confrontation Clause violation, then we must determine whether the district court abused its discretion when it admitted Defendant's breath test results from the IR 5000.

**B.      Cross-Examination Regarding the Functionality of the IR 5000**

**{19}** Defendant argues that his breath test results are inadmissible without testimony from a witness certifying to the accuracy and reliability of the IR 5000. It is undisputed that the only testimony offered regarding the IR 5000 came from Officers Stevenson and Zavala. The officers' testimony was limited to the procedures for administering Defendant's actual

test and the particular machine's certification and calibration results to reflect that the machine was "operating properly." In essence, Defendant argues that, along with the opportunity to confront the officer operating the IR 5000 at the time of his breath test, the Confrontation Clause also requires that he have the opportunity to challenge the underlying accuracy and reliability of the IR 5000 through mandatory cross-examination of witnesses knowledgeable about the manufacture of the IR 5000 machine and its scientific calibration. We disagree and conclude that this foundational argument improperly mixes preliminary, non-testimonial information with the testimonial aspects of Defendant's actual breath test administered by the arresting officer.

**{20}** Nothing in *Melendez-Diaz* or *Bullcoming* requires the State to produce a witness and provide foundational testimony that the IR 5000 is scientifically accurate and reliable in measuring the alcohol level in a person's breath. The New Mexico Legislature has established the scientific procedures necessary to ensure the accuracy of breath tests by mandating that breath tests taken pursuant to the Implied Consent Act be approved by the SLD. *See* NMSA 1978, § 66-8-107 (1993). In doing so, the Legislature has statutorily given SLD the original authority to determine which scientific tests and procedures will be recognized to produce legally accurate and reliable breath test results. *State v. Onsurez*, 2002-NMCA-082, ¶ 10, 132 N.M. 485, 51 P.3d 528 ("The [s]tate need not independently prove the scientific reliability of the [breathalyzer] test as part of its prima facie case."). As a result, the admissibility of breath test results turns on each particular test and the officer's compliance with the SLD regulations codified at 7.33.2.1-.18 NMAC (4/30/10). *See State v. Tom*, 2010-NMCA-062, ¶ 12, 148 N.M. 348, 236 P.2d 660 ("Compliance with accuracy-ensuring regulations of the [SLD] is a condition precedent to admission of [blood alcohol test] results."), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110; *State v. Martinez*, 2007-NMSC-025, ¶ 12, 141 N.M. 713, 160 P.3d 894 ("These regulations clearly exist to ensure that the result of a test conducted on a breathalyser is accurate.").

**{21}** It is clear that not all foundational evidence implicates the Confrontation Clause. *See Melendez-Diaz*, 557 U.S. at ___, 129 S. Ct. at 2539 (explaining that the Confrontation Clause only applies to facts regarding a defendant's guilt or innocence, and stating that a witness "could by affidavit *authenticate* . . . an otherwise admissible record, but could not . . . *create* a record for the sole purpose of providing evidence against a defendant"). It is the testimonial nature of a statement and its use against the defendant that triggers Confrontation Clause protection. *See id.*; *Bullcoming*, 564 U.S. at ___ n.1, 131 S. Ct. at 2720 n.1 ("[T]he purpose of the Confrontation Clause is to determine whether statements are testimonial and therefore require confrontation." (Sotomayor, J., concurring in part)).

**{22}** In determining whether compliance with SLD procedures implicated the Confrontation Clause, this Court has previously held that issues that are preliminary and foundational in nature are non-testimonial. *State v. Granillo-Macias*, 2008-NMCA-021, ¶¶ 16, 23, 143 N.M. 455, 176 P.3d 1187 (holding that a defendant's rights under the Confrontation Clause were not implicated when the district court admitted his breath test

7

results without affording an opportunity to confront and cross-examine a witness knowledgeable about the underlying SLD certification procedures). We explained that preliminary factual evidence is non-testimonial because it bears an attenuated relationship to conviction. *See id.* ¶ 21 ("It is important to note the distinction between (1) preliminary factual evidence (testimony as to certification) to establish a foundation for the admission of evidence to be used at trial (the breath test results), and (2) the evidence to be used at trial (the breath test results."). Foundational information regarding the scientific aspects of a breathalyzer machine would require too much of an inferential leap to serve as testimonial evidence of a defendant's guilt. *Id.* ¶ 23. As a result, factual evidence related to the scientific aspects of the certification procedures of the IR 5000 machine are non-testimonial because they would support one foundational fact, the scientific accuracy of the machine. *Id.* Thus, the Confrontation Clause did not apply to the preliminary evidence regarding the scientific aspects for certifying the machine because "[t]he witness that [the d]efendant demand[ed] for cross-examination would present nothing more than preliminary factual evidence to establish a foundation for the admission of evidence to be used at trial." *Granillo-Macias*, 2008-NMCA-021, ¶¶ 21, 23; *see also State v. Aragon*, 2010-NMSC-008, ¶ 8, 147 N.M. 474, 225 P.3d 1280 ("In essence, a person is a witness for Confrontation Clause purposes when that person's statements go to an issue of guilt or innocence."). Although we decided *Granillo-Macias* prior to the United States Supreme Court's recent holdings in *Melendez-Diaz* and *Bullcoming*, we conclude that our holding in *Granillo-Macias* is in line with the current status of Confrontation Clause jurisprudence. If Defendant desires to put the statutorily accepted scientific process on trial, then he must do so by calling an expert witness to testify pursuant to Rule 11-702 NMRA and properly raise a foundational challenge to the SLD's scientific procedure for establishing the reliability of the IR 5000. No such scientific challenge was made by Defendant in this case. We hold that the scientific reliability and functionality of the IR 5000 used to test Defendant's breath is a foundational issue that is only subject to challenge through expert testimony. In addition, the scientific aspects of the IR 5000 machine are non-testimonial facts and do not implicate the Confrontation Clause.

**{23}** In *Melendez-Diaz*, the United States Supreme Court noted the attenuated relationship between foundational evidence and evidence used to establish guilt, and limited the application of its holding to testimonial evidence *used against a defendant*. 557 U.S. at ___ n.1, ___, 129 S. Ct. at 2532 n.1, 2539. The Court emphasized that the certificates at issue were testimonial because the sole evidentiary purpose for offering the certificates was as direct proof of an element of the offense charged. *Id.* at ___, 129 S. Ct. at 2539. An analyst knows that the result of a substance test is for use at a specific trial and against a specific defendant when he or she swears to the result. *Id.* In response to an example regarding routine calibration and certification of machines raised by Justice Kennedy, *id.* at ___, 129 S. Ct. at 2545 (Kennedy, J. dissenting), the majority placed an important caveat in its holding. The majority emphasized, "we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or *accuracy of the testing device*, must appear in person as part of the prosecution's case." *Id.* at ___ n.1, 129 S. Ct. at 2532 n.1 (emphasis added). Similarly, a statement must

be testimonial to implicate the Confrontation Clause because "gaps in the chain of custody normally go to the weight of the evidence rather than its admissibility." *Id.* at ___, 129 S. Ct. at 2532 n.1. (alteration, internal quotation marks, and citation omitted). Thus, the Confrontation Clause is designed to "weed out" fraudulent and incompetent analysts whose testimony will be used to prove a fact necessary for conviction, not to ensure the reliability of every piece of evidence related to the defendant's trial. *Id.* at ___, ___, 129 S. Ct. at 2533, 2537 (explaining that cross-examination under oath in open court may cause "the analyst who provides false results . . . [to] reconsider his false testimony").

**{24}** Similarly, in *Bullcoming*, the United States Supreme Court again focused on the necessity of cross-examination of a person "with a personal, albeit limited, connection to the scientific test at issue." 564 U.S. at ___, 131 S. Ct. at 2722 (Sotomayor, J., concurring in part). In *Bullcoming*, the laboratory analyst who performed the test at issue was on an unspecified leave of absence at the time of trial, and the Court explained that "surrogate" testimony of another analyst who did not personally perform or observe the test was insufficient to satisfy the requirements of the Confrontation Clause. *Id.* at ___, 131 S. Ct. at 2710. Such testimony was insufficient because "surrogate testimony of the kind [the testifying analyst] was equipped to give could not convey what [the actual certifying analyst] knew or observed about the events his certification concerned, *i.e.*, the particular test and testing process he employed." *Id.* at ___, 131 S. Ct. at 2715. The Court explained that even the performing analyst "likely would not recall a particular test," but the in-court testimony of the performing analyst "would have enabled [the defendant's] counsel to raise before a jury questions concerning [the performing analyst's] proficiency, the care he took in performing his work, and his veracity." *Id.* at ___ n.7, 131 S. Ct. at 2715 n.7. The United States Supreme Court was particularly concerned with the substitute analyst's lack of knowledge as to "whether incompetence, evasiveness, or dishonesty accounted for [the testing analyst's] removal from his work station." *Id.* at ___, 131 S. Ct. at 2715. Thus, *Bullcoming* also recognizes a need to "expose any lapses or lies on the certifying analyst's part[,]" rather than the underlying foundational aspects of the science in the tests being performed. *Id.* As a result, our holding in *Granillo-Macias* that preliminary, foundational information does not implicate the Confrontation Clause remains consistent with the United States Supreme Court's subsequent holdings in *Melendez-Diaz* and *Bullcoming*.

**{25}** Defendant argues that the reliability of the IR 5000 is not preliminary, foundational information because the IR 5000 is manufactured for the purpose of providing evidence in a criminal proceeding. Although Defendant notes the "overlapping concerns" between foundational requirements and the Confrontation Clause, he attempts to implicate the Confrontation Clause by recasting the issue into one involving his "ability to cross-examine regarding issues that are simultaneously 'foundational' in nature." We conclude that re-framing the evidence in this manner would effectively apply the Confrontation Clause to non-testimonial scientific testing evidence and statements, contrary to the United States Supreme Court's holding in *Melendez-Diaz*. While the IR 5000 may be manufactured to produce evidence for later use in criminal and administrative hearings, the machine is only a tool of scientific measurement. The calibration of the IR 5000, for example is conducted

in compliance with SLD regulations to achieve accurate measurements, not in anticipation of any particular defendant's case or trial. *See Melendez-Diaz*, 557 U.S. at ___ n.1, 129 S. Ct. at 2532 n.1 ("[D]ocuments prepared in the regular course of equipment maintenance may well qualify as nontestimonial records."). Additionally, once calibrated, there is no guarantee that a particular IR 5000 machine will ever be used in any particular case. *See, e.g.*, *State v. Bergin*, 217 P.3d 1087, 1089-90 (Or. Ct. App. 2009) (finding breathalyzer certificates of calibration are non-testimonial). In *Melendez-Diaz*, the sole evidentiary purpose for the analysts' testimony was to offer their certificates as direct proof of an element of the offense charged, 557 U.S. at ___, 129 S. Ct. at 2532, whereas the scientific reliability of the IR 5000 merely establishes a foundation for accurately conducting a test to produce a scientific measurement. *See Granillo-Macias*, 2008-NMCA-021, ¶ 23. Because the underlying science and functionality of the IR 5000 bears only on the measurement to be used in conducting an analytical, scientific process, the scientific aspects of the breathalyzer machine are non-testimonial and the Confrontation Clause does not apply.

## C.      Defendant's Particular Breath Test

**{26}**     In this case, it is the officer's testimony regarding Defendant's act of blowing his breath into the machine that constitutes the testimonial evidence that requires the officer who administered the breathalyzer test to be present at trial and subject to cross-examination. The present case is easily distinguished from the testimony in *Bullcoming* because Officer Stevenson did testify at Defendant's trial and was available for cross-examination regarding the factual circumstances involved in the administration of Defendant's breath test. Since Officer Stevenson testified at Defendant's trial, the rights guaranteed him by the Confrontation Clause have not been violated. *See Bullcoming*, 564 U.S. at ___, 131 S. Ct. at 2715 (using the example of a radar gun to explain that the Confrontation Clause would require the officer who actually saw the read-out on a radar gun to present the information in court because an officer who did not actually see the read-out could not testify as to the factual conditions or events that may have affected the validity of the radar's read-out).

**{27}**     Given the statutory framework regarding breath tests, once the State satisfied the foundational requirements to measure alcohol in a person's breath, it was not an abuse of discretion for the district court to presume that the IR 5000 result was admissible under Rule 11-104(A) NMRA. *See Martinez*, 2007-NMSC-025, ¶ 21 ("When considering whether the result of a BAT [blood alcohol test] is reliable enough to be entered into evidence, Rule 11-104(A) governs . . . . The admission of evidence based on its reliability or lack thereof is a policy-based decision the judge, and the judge alone, makes."). Any concerns about non-testimonial, preliminary, or foundational information, such as the accuracy or reliability of a machine remain subject to challenge as part of a Defendant's evidence when he presents his case. *See State v. Chavez*, 2009-NMCA-089, ¶ 9, 146 N.M. 729, 214 P.3d 794 ("[T]he accuracy of BAC [blood alcohol content] test results should be regarded as a permissible line of inquiry . . . [and d]efendant would be permitted to present expert testimony concerning the accuracy of the [i]ntoxilyzer as a mechanism for obtaining breath-alcohol measurements."). If Defendant wanted to attack the scientific methods used in the

construction or operation of the IR 5000, it was incumbent on him to present the relevant scientific evidence as part of his defense. *See Martinez*, 2007-NMSC-025, ¶ 24 ("[O]nce the trial court determines that the [s]tate has met the foundational requirements for the admission of a BAT card, a defendant may successfully challenge the reliability of the breath test."). The district court appeared to recognize this principle when it explained, "I really don't see it as a [C]onfrontation [C]lause case. I do see it as perhaps a challenge to the reliability of the IR 5000, and it may very well be unreliable. We probably don't have enough scientific testimony here for anybody to reach that conclusion." As a result, it was not an abuse of discretion for the district court to admit Defendant's breath test results without requiring additional testimony from an expert.

## II.     The Right to Independent Chemical Testing

**{28}**     Section 66-8-109(B) of the Implied Consent Act requires that a person be advised of the right to an independent chemical test for blood or breath alcohol content in addition to any test performed at the direction of a law enforcement officer. Defendant cites *State v. Jones*, 1998-NMCA-076, ¶ 19, 125 N.M. 556, 964 P.2d 117, and contends that the district court erred in finding that Officer Stevenson did not deny Defendant his right to an independent test. As a result, Defendant argues that the district court erred in denying Defendant's motion to suppress his breath test results.

## A.     Standard of Review

**{29}**     "A review of the suppression of evidence is a mixed question of law and fact. We consider the facts in the light most favorable to the prevailing party and defer to the district court's findings of fact if those findings are supported by substantial evidence." *State v. Anaya*, 2008-NMCA-020, ¶ 5, 143 N.M. 431, 176 P.3d 1163 (citation omitted). "Substantial evidence is defined as that evidence which is acceptable to a reasonable mind as adequate support for a conclusion." *State v. Robinson*, 94 N.M. 693, 696, 616 P.2d 406, 409 (1980). The standard of review for an appeal from an order denying suppression also requires application of law to fact, which we review de novo. *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579.

## B.     Sufficiency of the Evidence

**{30}**     The district court made a factual finding that Defendant did not request a blood test. This finding was based on conflicting testimony from Officer Stevenson and Defendant. Ultimately, the district court found Officer Stevenson's testimony was more credible than Defendant's testimony. As fact-finder, the district court was entitled to judge the credibility of the witnesses, *Gilmore v. Gilmore*, 2010-NMCA-013, ¶ 35, 147 N.M. 625, 227 P.3d 115, and, on appeal, we will not second-guess its judgment as to credibility. *See Mares v. Valencia Cnty. Sheriff's Dep't*, 106 N.M. 744, 747, 749 P.2d 1123, 1126 (Ct. App. 1988) (stating that an appellate court will not second-guess the fact-finder if the determination is supported by substantial evidence). After reviewing the record, we conclude that the district

court's determination was supported by substantial evidence.

**{31}** Officer Stevenson testified that he read Defendant the Implied Consent Act and, in doing so, informed Defendant that he had the right to choose an additional test. Officer Stevenson further explained that Defendant consented to take a breath test and that he did not remember anything to indicate that Defendant wished to have an additional test performed. Officer Stevenson also testified that he initially asked Defendant to take a blood test rather than a breath test and admitted that he did not remember why he ultimately tested Defendant's breath. However, Officer Stevenson also explained that, in his experience, it can sometimes take much longer to conduct a blood test than a breath test and, while he could not say with certainty, there was a "high possibility" that it would have taken too long to test Defendant's blood the night of his DWI. Officer Stevenson also reiterated to the district court that he read Defendant the Implied Consent Act, and Defendant never indicated that he wanted a second test. He also specified that had Defendant asked for an alternate test, he "would have made a reasonable opportunity to have one done" or "taken [Defendant] back up [to the hospital,]" but also that he was "not going to beg [Defendant] to take [another] test."

**{32}** The district court also heard Defendant's conflicting testimony that he wanted a blood test and was never given one. Defendant testified that despite his repeated requests for a blood test, Officer Stevenson told him there was not enough time. He explained that he did not press the issue with Officer Stevenson because he was afraid of being charged with "interfering with police officers or something else[.]" However, when Defendant was asked directly whether he objected to Officer Stevenson taking him out of the hospital without the blood test, Defendant's answer was evasive. He said, "I wanted the blood test because blood does not lie."

**{33}** After hearing testimony from both witnesses, the district court, sitting in its capacity as the fact-finder in a bench trial, determined that Defendant made no request for a blood test. *See State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988) (observing that the fact-finder is free to reject a defendant's version of events). Despite Defendant's testimony to the contrary, Officer Stevenson's testimony provides substantial evidence to support the district court's finding, and we will not disturb it on appeal. *See State v. Rubio*, 2002-NMCA-007, ¶ 12, 131 N.M. 479, 39 P.3d 144 (concluding that an officer's testimony that he provided *Miranda* warnings was substantial evidence upholding the district court's determination despite contrary circumstantial indications); *State v. Rogers*, 100 N.M. 517, 518, 673 P.2d 142, 143 (Ct. App. 1983) (determining that an officer's testimony provided substantial evidence to support the district court's finding even where defendant and his neighbors testified to the contrary). Accordingly, the district court did not err when it denied Defendant's motion to suppress.

### III.  Defendant's Miranda Rights

**{34}** Citing *Miranda*, 384 U.S. at 444-45, Defendant contends that his DWI investigation

12

constituted a custodial interrogation and his incriminating statements should be suppressed because he was not advised of his constitutional rights. In response, the State contends that Defendant failed to preserve this claim and this Court should not consider Defendant's argument. We agree with the State that Defendant failed to preserve the *Miranda* issue.

**{35}** Our review of the record reveals that the first and only time Defendant mentioned rights provided by *Miranda* was during closing argument. *See Onsurez*, 2002-NMCA-082, ¶ 20 (holding that a defendant failed to preserve his objection when he waited until closing argument to point out the error). The issue was not raised in any of Defendant's motions to suppress. Similarly, during his bench trial, Defendant did not alert the State or the district court that this was an issue before he presented his witnesses, nor did he mention *Miranda* when he cross-examined Officer Stevenson or objected to Officer Stevenson's testimony regarding Defendant's incriminating admissions. *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (stating in order to preserve an issue for appeal, the defendant must make a timely objection that specifically informs the district court of the nature of the claimed error and invokes an intelligent ruling thereon). Moreover, even when Defendant did mention *Miranda* warnings during closing argument, he cited no authority for the point other than "he's entitled to be advised of certain [c]onstitutional [r]ights once he's placed under arrest" and that Defendant's arrest was "an interesting issue as it relates to *Miranda* with DWI's." Defendant never asked for a ruling on the matter, nor did the court rule on the issue. *See* Rule 12-216(A) NMRA (stating "[t]o preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked"); *State v. Vargas*, 1996-NMCA-016, ¶ 15, 121 N.M. 316, 910 P.2d 950 (holding that the defendants failed to preserve a pretextual entry issue when they did not request that the district court rule on that issue); *see also State ex rel. Human Servs. Dep't v. Martin*, 104 N.M. 279, 280, 720 P.2d 314, 315 (Ct. App. 1986) (observing that the requirement of preservation of error for appellate review applies equally to constitutional questions).

**{36}** Additionally, during cross-examination of Officer Stevenson, defense counsel introduced the video recording of Defendant's performance on the field sobriety tests, and Defendant himself admitted to consuming two beers when he took the stand. A party cannot preserve an argument for error regarding the admission of evidence that the party introduced. *See State v. Handa*, 120 N.M. 38, 45-46, 897 P.2d 225, 232-33 (Ct. App. 1995) (reasoning that a party cannot invite an error and subsequently complain about that very error); *see also State v. Bankert*, 117 N.M. 614, 622, 875 P.2d 370, 378 (1994) (concluding the doctrine of fundamental error has no application in cases where the defendant, by his own actions, invites error). Because the *Miranda* issue was not preserved below, we decline to address this matter any further. *See State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct. App. 1986) ("The court had no opportunity to consider the merits of, or to rule intelligently on, the argument defendant now puts before us.").

**CONCLUSION**

**{37}** For the foregoing reasons, we affirm the judgment of the district court.

13

**{38}** **IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**RODERICK T. KENNEDY, Judge**

**Topic Index for _State v. Anaya_, No. 30,675**

**APPEAL AND ERROR**
Standard of Review
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**
Confrontation
Miranda Warnings

**CRIMINAL LAW**
Driving While Intoxicated

**CRIMINAL PROCEDURE**
Expert Witness
Implied Consent

**EVIDENCE**
Blood/Breath Tests
Expert Witness

**GOVERNMENT**
Implied Consent Act