This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **No. 33,338**

**EDMUND EVENSEN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Jeff F. McElroy, District Judge**

Hector H. Balderas, Attorney General
Paula E. Ganz, Assistant Attorney General
Santa Fe, NM

for Appellee

Alan Maestas Law Office, P.C.
Kathryn J. Hardy
Alan H. Maestas
Taos, NM

for Appellant

## MEMORANDUM OPINION

**SUTIN, Judge.**

{1}     Defendant Edmund Evensen appeals from a district court judgment entered pursuant to Defendant's conditional plea of guilty to the crimes of attempt to commit armed robbery, contrary to NMSA 1978, Section 30-16-2 (1973), and NMSA 1978, Section 30-28-1(B) (1963), and aggravated battery with a deadly weapon, contrary to NMSA 1978, Section 30-3-5(A), (C) (1969). He raises two main issues. First, Defendant argues that the district court erred in denying his motion to suppress evidence that was gathered by police after they made a warrantless entry into his hotel room. Secondly, Defendant argues that his convictions violated his constitutional right to be free from double jeopardy.

{2}     We conclude that the district court's decision to deny Defendant's motion to suppress on the ground that Defendant consented to the warrantless entry was supported by substantial evidence. We further conclude that Defendant's convictions do not violate his right to be free from double jeopardy because distinct factual bases supported a finding of guilt as to each charge. We affirm.

**BACKGROUND**

{3}     Because this is a memorandum opinion and the parties are familiar with the facts, this background section is limited to the factual and procedural events that are required to place our discussion in context. Additional facts are provided within the body of the Opinion as necessary.

{4}      Steven Vigil (Victim) was parked at an ATM in Taos, New Mexico, when Defendant's girlfriend, Amanda Cruz, ran toward Victim's truck, told him that she was fighting with her boyfriend, and asked Victim for a ride. Victim responded to Ms. Cruz by lowering his window, and when he did, Defendant, armed with a knife, put his arm around Victim's neck and demanded money. Victim did not give Defendant any money; he told Defendant to relax, and Defendant cut Victim's neck with the knife. During an ensuing struggle between Victim and Defendant, Victim put his truck in reverse and got away from Defendant. Before Victim called the police, he saw Defendant run behind a nearby movie theater, and he saw Ms. Cruz walk toward a nearby hotel.

{5}      Within fifteen minutes of the attack, law enforcement officers from the Taos County Sheriff's Department and the Taos Police Department spoke with a security guard who worked at the nearby hotel. Based on Victim's descriptions of Defendant and Ms. Cruz that one of the officers relayed to the security guard, the security guard told the officers that the two were guests at the hotel and led them to Defendant's room. Under circumstances that are a subject of this appeal and will be discussed in greater detail later, the officers entered the hotel room without a warrant. Defendant and Ms. Cruz were inside. Once inside, one of the officers seized a knife from underneath the refrigerator door. Defendant was arrested, and he was later indicted on

3

charges of attempt to commit armed robbery and aggravated battery with a deadly weapon.

{6} Defendant filed a motion to suppress evidence seized from the hotel room and all evidence derived as a result of the unlawful entry based on a theory that law enforcement officers made a warrantless entry into the hotel room that was not justified by any exception to the warrant requirement. In its response to Defendant's motion to suppress, the State argued, in relevant part, that the warrantless entry was authorized because Defendant consented to it and that once inside, one of the officers saw the knife in plain view. In support of its consent argument, the State attached to its response a supplemental report written by Deputy Jake Cordova of the Taos County Sheriff's Department who stated in the report that he knocked on Defendant's hotel room door and Defendant answered. He then asked Defendant whether he could enter into the room, and Defendant said, yes. According to Deputy Cordova's supplemental report, once he was inside the room, he observed what appeared to be a knife underneath the refrigerator door.

{7} The district court held an evidentiary hearing on Defendant's motion to suppress. Although Deputy Cordova did not testify at the hearing, the State relied on his supplemental report in its opening and closing arguments to support its contention that the law enforcement officers had Defendant's consent to enter the hotel room and

4

that the knife was in plain view. Defendant did not object to the State's reliance on Deputy Cordova's supplemental report, and in his closing argument, Defendant addressed the substance of the supplemental report, arguing that it was "a lie" that was contradicted by other evidence that had been presented at the hearing.

{8}     In a letter decision issued after the evidentiary hearing, the district court, relying in part on Deputy Cordova's supplemental report, denied Defendant's motion to suppress. The district court concluded that the warrantless entry into Defendant's hotel room was authorized by Defendant, who, according to the court's letter decision, "opened the door and invited [Deputy Cordova] into the hotel room." The court further found that "[e]ven if" Deputy Cordova did not have Defendant's consent to enter the hotel room, the entry was justified by exigent circumstances. Further, the court concluded that the seizure of the knife was permissible because the knife was in Deputy Cordova's plain view once he had entered the hotel room.

{9}     Defendant pleaded guilty to the crimes with which he had been charged. The plea, which was conditional, allowed Defendant to appeal the district court's ruling on his motion to suppress. He appeals from the court's judgment entered pursuant to the plea agreement.

{10}     On appeal, Defendant argues, for the first time, that because the State failed to formally seek to admit Deputy Cordova's supplemental report into evidence, the

district court was not permitted to consider the supplemental report in ruling on Defendant's motion to suppress. Building on the premise that the supplemental report was "not evidence" of consent, Defendant argues that "there was no evidence presented by the State regarding consent" from which the district court could conclude that Defendant consented to Deputy Cordova's entry into the hotel room. Additionally, Defendant argues that exigent circumstances did not permit a warrantless entry into the hotel room. Since Deputy Cordova's warrantless entry was not justified by consent or exigent circumstances, Defendant argues, he was not lawfully positioned when he observed the knife in plain view. Alternatively, Defendant argues, the knife was not in plain view, but rather it was found after an unlawful warrantless search of the hotel room. Finally, Defendant argues that his convictions violated his constitutional right to be free from double jeopardy.

{11}     We do not consider Defendant's unpreserved argument that the district court could not rely on Deputy Cordova's supplemental report in its ruling on Defendant's motion to suppress. We conclude that sufficient evidence supported the district court's conclusion that Defendant consented to Deputy Cordova's warrantless entry into Defendant's hotel room and that Deputy Cordova saw the knife within plain view. Accordingly, we do not consider Defendant's exigent circumstances argument. We

6

further conclude that Defendant's convictions do not violate his right to be free from double jeopardy.

**DISCUSSION**

**Standard of Review**

{12}    "In reviewing a trial court's denial of a motion to suppress, we observe the distinction between factual determinations which are subject to a substantial evidence standard of review and application of law to the facts, which is subject to de novo review." *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (alteration, internal quotation marks, and citation omitted). The district court's factual determinations are viewed in the light most favorable to the prevailing party to determine whether they are supported by substantial evidence. *Id.* "Substantial evidence is . . . relevant evidence that a reasonable mind would find adequate to support a conclusion." *State v. Brown*, 2014-NMSC-038, ¶ 43, 338 P.3d 1276 (internal quotation marks and citation omitted). We review double jeopardy issues de novo. *State v. Melendrez*, 2014-NMCA-062, ¶ 5, 326 P.3d 1126, *cert. denied*, 2014-NMCERT-006, 328 P.3d 1188.

**The Warrantless Entry Issue**

{13}    Consent is a well-established exception to the constitutional prohibition against warrantless entries into a suspect's hotel room. *See State v. Pool*, 1982-NMCA-139,

7

¶ 9, 98 N.M. 704, 652 P.2d 254 (recognizing that the Fourth Amendment to the United States Constitution prohibits the police from making a non-consensual warrantless entry into a suspect's hotel room); *see also State v. Duffy*, 1998-NMSC-014, ¶ 72, 126 N.M. 132, 967 P.2d 807 ("It is constitutionally permissible for the police to search a person's home if they have received valid consent from a person who is in possession of . . . the premises."), *overruled in part on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. The State bears the burden of proving consent. *State v. Flores*, 1996-NMCA-059, ¶ 26, 122 N.M. 84, 920 P.2d 1038. To meet that burden, the State must present evidence that the consent was unequivocal and specific. *State v. Valencia Olaya*, 1987-NMCA-040, ¶ 28, 105 N.M. 690, 736 P.2d 495.

{14}    In the present case, the district court's finding that Defendant consented to a warrantless police entry into his hotel room was supported by a number of facts presented by the State at the suppression hearing. Foremost, the State presented Deputy Cordova's supplemental report. Deputy Cordova, who was one of the first officers to arrive at the hotel, stated in his supplemental report that he knocked on the door of Defendant's hotel room and that Defendant answered. He asked Defendant if he could enter the room, and Defendant said, yes. Further, the State presented the testimony of investigator Dennis Romero who interviewed Ms. Cruz regarding this case. According to Mr. Romero, when he asked Ms. Cruz about how the officers came

into the hotel room, she stated that she told Defendant not to open the door, but that he got up and opened the door. Additionally, the hotel security guard, who had directed the officers to Defendant's hotel room, stated in a police interview taken on the night of the incident that Defendant "answered right away" after the police knocked. The foregoing constitutes substantial evidence from which the district court could conclude that Defendant opened the door when Deputy Cordova knocked and that he consented to the police entering his hotel room. *See Brown*, 2014-NMSC-038, ¶ 43 (stating that substantial evidence is that which "a reasonable [person] would find adequate to support a conclusion" (internal quotation marks and citation omitted)).

{15} Viewing the evidence in a light most favorable to himself, Defendant argues that substantial evidence was presented at the hearing on Defendant's motion to suppress that "raise[s] serious doubts about the truthfulness of the statements in Deputy Cordova's report[.]" Defendant's argument is unpersuasive for two reasons. First, it is contrary to our standard of review that requires appellate courts to view the evidence in the light most favorable to the prevailing party, which, in the present case, is the State. *Hubble*, 2009-NMSC-014, ¶ 5. Secondly, credibility determinations are the province of the fact-finder, and this Court will not second guess the district court's determination that Deputy Cordova's supplemental report, which comported with statements made by Ms. Cruz and the hotel security guard, was credible. *See State v.*

9

*Anaya*, 2012-NMCA-094, ¶ 30, 287 P.3d 956 (stating that this Court will not second guess credibility determinations that are made by the district court in its role as fact-finder ).

{16}    Defendant also argues that because the State did not seek to formally admit Deputy Cordova's supplemental report into evidence at the suppression hearing, it was not "evidence" that the district court was entitled to consider in making its determination. Defendant's argument in this regard was not preserved and will not be considered on appeal. *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (stating that in order to preserve an issue for appeal, the defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon). That Deputy Cordova's supplemental report was attached to the State's response to Defendant's motion to suppress, relied upon by the State in its opening and closing arguments at the suppression hearing, and its substance directly addressed by Defendant who sought to refute it during his closing argument belies Defendant's contention on appeal that he was not afforded an opportunity to object to it.

{17}    In sum, we conclude that substantial evidence supported the district court's conclusion that Defendant consented to the warrantless entry by law enforcement officers into his hotel room. As such, we do not consider whether the district court's

10

alternative finding that exigent circumstances justified the warrantless entry was supported by the evidence.

**The Plain View Issue**

{18} The district court concluded that Deputy Cordova's warrantless seizure of the knife from Defendant's hotel room was permissible based on the doctrine of plain view. "Under the plain view exception to the warrant requirement, items may be seized without a warrant if the police officer was lawfully positioned when the evidence was observed, and the incriminating nature of the evidence was immediately apparent, such that the officer had probable cause to believe that the article seized was evidence of a crime." *State v. Ochoa*, 2004-NMSC-023, ¶ 9, 135 N.M. 781, 93 P.3d 1286.

{19} Defendant argues that Deputy Cordova was not lawfully present in Defendant's hotel room when he seized the knife, and alternatively, he argues that even if Deputy Cordova was lawfully present, the knife was not immediately apparent. Having concluded that Deputy Cordova was, by virtue of Defendant's consent, lawfully in Defendant's hotel room when he seized the knife, we limit our review of Defendant's plain view issue to whether substantial evidence supported the district court's implicit determination that the knife was immediately apparent.

11

**{20}** The district court reasoned and Defendant does not refute that, under the circumstances, it was reasonable for the officer to scan the room for the knife that had been used in the attack. In Deputy Cordova's supplemental report, he stated that, having entered the room, he observed "what appeared to be a knife under the refrigerator door." In a video recording made in Defendant's hotel room on the night of the incident, Deputy Cordova stated to another officer that, when he kneeled down, he could see the knife under the refrigerator door, and he acquiesced in the other officer's statement: "so it was kinda concealed." Relying on the foregoing, the court concluded that the knife was in plain view.

**{21}** Again, viewing the evidence in a light most favorable to himself, Defendant argues that evidence presented at the suppression hearing places in "serious doubt" the veracity of Deputy Cordova's supplemental report. In support of this argument, Defendant focuses on the fact that Deputy Cordova agreed with another officer that the knife was "kinda concealed" and that the hotel security guard testified at the suppression hearing that Deputy Cordova "opened the door to the refrigerator and then he noticed . . . the knife" that "was somehow wedged under" the refrigerator. Defendant relies on these facts to support his theory that the knife was only visible after the refrigerator door was opened, and it was thus not "immediately apparent." We are not persuaded by Defendant's argument.

**{22}** We observe that, in addition to the excerpts of the security guard's testimony upon which Defendant relies, the security guard also testified that Deputy Cordova "noticed [the knife] right away." Viewing the evidence in the light most favorable to the State, substantial evidence, including Deputy Cordova's supplemental report, the security guard's testimony, and Deputy Cordova's recorded conversation with a fellow officer supported an inference that Deputy Cordova immediately observed the knife that was only "kinda concealed" under the refrigerator and, accordingly, he opened the door to retrieve it. We will not second guess the district court's decision to reject a possible contrary inference based on the security guard's interpretation of Deputy Cordova's thought process that the deputy did not "notice" the knife until after he opened the refrigerator door. *See Anaya*, 2012-NMCA-094, ¶ 30 ("[A]n appellate court will not second[]guess the fact-finder if the determination is supported by substantial evidence.").

**{23}** In sum, we conclude that the evidence before the district court at the suppression hearing was adequate to support the court's conclusion that the knife was in plain view. *See Brown*, 2014-NMSC-038, ¶ 43 (stating the standard by which substantial evidence is measured).

**The Double Jeopardy Issue**

**{24}** The State argues that because Defendant did not reserve the right to appeal on double jeopardy grounds in his plea agreement, the issue should not be considered on appeal. We disagree. "A plea agreement, which may result in the waiver of other potential claims, has no effect on a defendant's right to raise a double[]jeopardy" argument on appeal. *State v. Nunez*, 2000-NMSC-013, ¶ 98, 129 N.M. 63, 2 P.3d 264.

**{25}** In *State v. Fuentes*, this Court rejected an argument that the defendant's convictions for armed robbery and aggravated battery with a deadly weapon that were premised on unitary conduct violated double jeopardy. 1994-NMCA-158, ¶¶ 2-3, 18, 119 N.M. 104, 888 P.2d 986. As is required in a double-description double jeopardy analysis, in *Fuentes* we considered whether the Legislature intended to punish the two crimes separately. 1994-NMCA-158, ¶ 7; *see State v. Swick*, 2012-NMSC-018, ¶ 11, 279 P.3d 747 (stating the two-part analysis used to determine whether the defendant's separate convictions violate the prohibition against double jeopardy in a double-description case). One abiding indicator of legislative intent is whether the two statutes address different social harms, and in *Fuentes*, we observed that the prohibitions against armed robbery and aggravated battery address distinct social harms. 1994-NMCA-158, ¶¶ 15-16 (recognizing that the armed robbery statute is targeted at the "social evil . . . of crimes against property[,]" whereas the aggravated

14

battery statute is designed to protect people); *see also Swick*, 2012-NMSC-018, ¶ 13 (stating that evaluation of the particular evils that are proscribed by different statutes is one indicator of legislative intent to be employed in a double jeopardy analysis); *Swafford v. State*, 1991-NMSC-043, ¶¶ 31-32, 112 N.M. 3, 810 P.2d 1223 (same). In *Fuentes*, in support of the well-established proposition that legislative intent may be gleaned by evaluating the societal harm targeted by the statute, we cited *State v. Gonzales*, 1992-NMSC-003, ¶ 12, 113 N.M. 221, 824 P.2d 1023, *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 2, 306 P.3d 426. *Fuentes*, 1994-NMCA-158, ¶ 16. *Gonzales* was not otherwise cited nor was its rationale otherwise invoked in *Fuentes*.

{26}     In *Montoya*, the Supreme Court put to rest the long-standing issue whether double-description convictions for shooting at a motor vehicle and a resultant homicide violated double jeopardy. *Montoya*, 2013-NMSC-020, ¶¶ 2, 34, 54 (stating that for two decades our Supreme Court wrestled with the double jeopardy concerns raised by the two specific statutes that criminalize shooting at a motor vehicle and homicide, respectively). Insofar as *Gonzales* stood for the proposition that double-description convictions for shooting at a motor vehicle and murder did not constitute a double jeopardy violation, *Montoya* expressly overruled it and the cases that followed it. *Montoya*, 2013-NMSC-020, ¶¶ 2, 54.

15

{27} Defendant argues that because *Fuentes* was the "progeny of *Gonzales*," this Court should recognize that *Fuentes* was overruled by *Montoya*. To the extent that Defendant's characterization of *Fuentes* as the "progeny of *Gonzales*" is based upon a single citation in *Fuentes* to *Gonzales* for a proposition of law that bears continuing validity, an argument built upon that characterization is entirely unpersuasive and will not be considered further.

{28} Defendant argues, in the alternative, that because *Fuentes* pre-dated our Supreme Court's implementation of a "modified" *Blockburger* analysis, our holding in *Fuentes* does not justify summarily rejecting his double jeopardy argument. *See Swick*, 2012-NMSC-018, ¶ 21 (recognizing the adoption, in *State v. Gutierrez*, 2011-NMSC-024, ¶ 58, 150 N.M. 232, 258 P.3d 1024, of a "modified . . . *Blockburger* analysis to be used in New Mexico"). We agree. Accordingly, we analyze Defendant's double jeopardy argument pursuant to the modified *Blockburger* test.

{29} In any double-description double jeopardy argument, such as the one made by Defendant, we consider (1) whether the defendant's convictions were premised on unitary conduct, and if so, (2) whether the Legislature intended to punish the crimes separately. *Swick*, 2012-NMSC-018, ¶ 11 (stating the two-part analysis used to determine whether the defendant's separate convictions violate the prohibition against double jeopardy in a double-description case). Pursuant to the modified *Blockburger*

analysis, courts evaluating the second factor must consider whether one of the statutes is "vague and unspecific," and if so, whether the State's legal theory of the case caused one crime to be subsumed within the other. *Swick*, 2012-NMSC-018, ¶¶ 21, 24 (internal quotation marks and citation omitted); *Gutierrez*, 2011-NMSC-024, ¶ 58. This modification precludes a "mechanical" application of the *Blockburger* analysis whereby "it [was] enough for two statutes to have different elements." *Swick*, 2012-NMSC-018, ¶ 21.

{30} Defendant asserts that his two convictions were premised on unitary conduct. The State does not refute this assertion, nor under the circumstances of this case could it reasonably do so. Defendant's convictions for attempt to commit armed robbery and aggravated battery with a deadly weapon were based on a continuing, uninterrupted series of events. *See Melendrez*, 2014-NMCA-062, ¶ 8 (stating that unitary conduct may be characterized by acts that are done "close in time and space" and without intervening events). Accordingly, we consider whether the Legislature intended to punish the two crimes separately.

{31} We begin by considering the elements of the two crimes to determine whether one is "definitionally subsumed within the other[.]" *Montoya*, 2013-NMSC-020, ¶ 32. Pursuant to Section 30-28-1, attempt to commit armed robbery "consists of an overt act in furtherance of and with intent to" commit a "theft of anything of value from the

17

person of another or from the immediate control of another, by use or threatened use of force or violence . . . while armed with a deadly weapon[,]" but failing to effect the commission of armed robbery. Section 30-16-2. Aggravated battery with a deadly weapon "consists of the unlawful touching or application of force to the person of another [with a deadly weapon] with intent to injure that person[.]" Section 30-3-5(A), (C).

{32}    As this Court noted in *Fuentes*, aggravated battery and armed robbery have distinct intent elements, that is, the specific intent of the robbery is to deprive a victim of his property, whereas the specific intent of the battery statute is to injure the victim. 1994-NMCA-158, ¶ 8. Owing to the distinct intent elements in each statute, neither is definitionally subsumed by the other. Further, because the issue whether the at-issue statutes address different social harms was resolved by this Court in *Fuentes*, we turn now to the issues of whether one of the at-issue statutes is vague and unspecific. *See id.* ¶ 16 (concluding that the social evil targeted by the aggravated battery statute is harmful force directed against a person, whereas the armed robbery statute primarily targets crimes against property).

{33}    In *Swick*, our Supreme Court addressed the issue whether the defendant's convictions for attempted murder and aggravated battery that arose out of unitary conduct violated the prohibition against double jeopardy. 2012-NMSC-018, ¶¶ 11, 20.

18

The *Swick* Court reasoned that the attempted murder statute was vague and unspecific because "many forms of conduct can support the [attempted murder element of] 'began to do an act which constituted a substantial part of [m]urder[.]' " *Id.* ¶ 25. Defendant argues that, like the attempted murder statute discussed in *Swick*, the statutory definition of attempted armed robbery is vague and unspecific because many forms of conduct can constitute an "overt act" in furtherance of and with intent to commit an armed robbery.

**{34}** Here, as in *Swick*, the issue of vagueness and lack of specificity stems from the attempt statute, Section 30-28-1. *See Swick*, 2012-NMSC-018, ¶ 22 (relying on the indictment's paraphrased version of Section 30-28-1 to state the elements of attempted murder). The attempt statute provides that "[a]ttempt to commit a felony consists of an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission." Section 30-28-1. Applying the rationale of *Swick* to the circumstances of this case, we agree with Defendant that the phrase "an overt act in furtherance of and with the intent to commit" an armed robbery could describe many forms of conduct. Accordingly, we must consider the State's theory of the case to determine whether the "overt act" that provided the basis for Defendant's attempted armed robbery charge was the same overt act that provided the basis for the aggravated battery charge. *Cf. Swick*, 2012-NMSC-018, ¶¶ 26-27 (analyzing the

19

prosecution's theory of the case as it applied to both crimes and holding that because the prosecution relied on the defendant's acts of beating, stabbing, and slashing the victims to prove aggravated battery as well as attempted murder, the attempted murder elements subsumed those of aggravated battery).

{35}     The factual basis underlying Defendant's guilty plea as recited by the prosecutor was the following. Victim was parked at an ATM when Defendant and Ms. Cruz approached Victim's vehicle. The attempted armed robbery occurred when Defendant, who was holding a knife, put his arm around Victim's neck and demanded money. When Victim responded by telling Defendant to "relax," Defendant cut Victim's neck with the knife, and a struggle ensued between Victim and Defendant. Defendant's act of cutting and struggling with Victim constituted the aggravated battery. Thus, according to the State's theory of the case, the factual bases underlying the two crimes were distinct. Under these circumstances, neither crime was subsumed by the other. Defendant's arguments to the contrary are unpersuasive.

{36}     In sum, we conclude that Defendant's right to be free from double jeopardy was not violated when, pursuant to his plea agreement, he was convicted of both aggravated battery and attempt to commit armed robbery.

**CONCLUSION**

{37}     We affirm.

20

{38}    **IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief Judge**

_____
**J. MILES HANISEE, Judge**