**Certiorari Denied, November 1, 2012, No. 33,841**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2012-NMCA-119**

**Filing Date: August 28, 2012**

**Docket No. 31,320**

**STATE OF NEW MEXICO,**

          **Plaintiff-Appellee,**

**v.**

**ALVIN P. KING,**

          **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF McKINLEY COUNTY**
**Louis E. DePauli, Jr., District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}**      Defendant, Alvin P. King, appeals from his conviction for driving while under the influence of intoxicating liquor (DWI) contrary to NMSA 1978, Section 66-8-102(C)(1) (2010), commonly referred to as per se DWI.  Defendant argues that the district court (1) erred by refusing to allow him to present expert scientific testimony on the reliability and

1

accuracy of the intoxilyzer machine used to determine his breath alcohol content, and (2) violated his confrontation rights by allowing the admission of his breath test result without live testimony from the key operator or an expert from the Scientific Laboratory Division (the SLD). We hold that Defendant was entitled to present expert testimony challenging the reliability of the intoxilyzer machine and that the expert's failure to examine the machine in question did not preclude such testimony. We reverse Defendant's conviction and remand for a new trial. As a result, we do not reach Defendant's confrontation issue.

## BACKGROUND

**{2}**    Defendant was convicted after a jury trial of per se DWI because he drove with an alcohol concentration of .08 or higher. *See* § 66-8-102(C)(1). The only witness for the State was Officer Devin Largo, who testified that he stopped Defendant for a possible seat belt violation, observed signs of intoxication, read Defendant the Implied Consent Act, NMSA 1978, § 66-8-105 to -112 (1978, as amended through 2007), and performed a breath alcohol test on Defendant using an Intoxilyzer 8000 machine. Officer Largo was trained to operate the Intoxilyzer 8000, but he was not a "key operator" and did not know how it worked. A "key operator" is someone assigned by the SLD to make sure that an intoxilyzer machine is working properly. Officer Largo testified that he understood the Intoxilyzer 8000 to be operating properly based on the key operator's calibration log, which shows whether the machine passed its diagnostic tests, and the printout the Intoxilyzer 8000 produced.

**{3}**    Defendant proposed to call an expert witness, Dr. Edward Reyes, to testify concerning the reliability and accuracy of the Intoxilyzer 8000 and its readings. Defendant proffered that Dr. Reyes was an expert in pharmacology and toxicology with an analytic chemistry background, who has been trained to use the Intoxilyzer 8000. According to Defendant, Dr. Reyes would testify concerning, *inter alia*, the operation of the Intoxilyzer 8000, its analytical difference from a blood alcohol test, and the possibility of inaccuracies, including inaccurately high readings. Defendant acknowledged that Dr. Reyes did not examine the specific Intoxilyzer 8000 used in this case, but Defendant proffered that Dr. Reyes' testimony would be based on the "structure, mechanisms, and workings" that are common to all Intoxilyzer 8000 machines.

**{4}**    The district court, agreeing with the State, did not allow Dr. Reyes to testify. It reasoned that (1) Dr. Reyes did not examine the machine that was used and could not testify to the particular machine's validity, (2) Dr. Reyes' testimony would not be relevant in view of state law authorizing the use of an intoxilyzer machine, and (3) Dr. Reyes' testimony would either not be probative or its prejudicial effect would outweigh its probative value. We will focus on the district court's last reason.

## ADMISSIBILITY OF DR. REYES' EXPERT TESTIMONY

**{5}**    We review a district court's decision concerning the admission of expert testimony for an abuse of discretion. *State v. Alberico*, 116 N.M. 156, 169, 861 P.2d 192, 205 (1993).

2

A district court abuses its discretion if its decision is "obviously erroneous, arbitrary, or unwarranted[,]" or "clearly against the logic and effect of the facts and circumstances" of the case. *Id.* at 170, 861 P.2d at 206. However, as our Supreme Court has expressed, an abuse of discretion review "is not tantamount to rubber-stamping" the district court's decision. *Id.* "It should not prevent an appellate court from conducting a meaningful analysis of the admission [of] scientific testimony to ensure that the [district court's] decision was in accordance with the Rules of Evidence and the evidence in the case." *Id.* We thus turn to the rules of evidence to analyze the district court's decision in this case. *See State v. Torrez*, 2009-NMSC-029, ¶¶ 1, 8-9, 146 N.M. 331, 210 P.3d 228 (reviewing the district court's admission of the testimony of an expert witness concerning "gang-related law enforcement and gang culture" under the rules of evidence following *Alberico*).

**{6}** Rule 11-702 NMRA permits a qualified expert witness to testify in the form of an opinion if "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" To analyze the admissibility of Dr. Reyes' testimony, we first look to the purpose Defendant sought to achieve in offering the testimony. *See Torrez*, 2009-NMSC-029, ¶ 10 (stating that "the proper initial inquiry for the admissibility of expert opinion testimony is to determine the purpose for which it is being offered" (alterations, internal quotation marks, and citation omitted)). Understanding this purpose, we then can determine whether Dr. Reyes would be qualified and whether his testimony would assist the trier of fact and be relevant, probative, and not unfairly prejudicial under the rules of evidence. *Id.*

**{7}** The per se DWI statute declares it unlawful for

> a person to drive a vehicle in this state if the person has an alcohol concentration of eight one hundredths or more in the person's blood or breath within three hours of driving the vehicle and the alcohol concentration results from alcohol consumed before or while driving the vehicle[.]

Section 66-8-102(C)(1). To prove per se DWI, the State introduced evidence that Officer Largo performed a breath alcohol test on Defendant using an Intoxilyzer 8000 machine, that the machine had been certified and calibrated, and that the machine read Defendant's breath alcohol content to be .11. Defendant proffered that Dr. Reyes would testify about the manner in which an Intoxilyzer 8000 works including the general pitfalls of the technology, its difference from a blood test, and the possibility of its producing an inaccurate blood alcohol content. The purpose of Dr. Reyes' testimony would have been to challenge the reliability of the breath alcohol test performed on Defendant to raise a reasonable doubt that Defendant's alcohol concentration was .08 or more.

**{8}** Turning to Rule 11-702, the qualifications of Dr. Reyes do not appear to be at issue. Defense counsel stated that Dr. Reyes was an expert in pharmacology and toxicology with an analytical chemistry background. The State did not raise any objection to Dr. Reyes' qualifications. When the district court asked defense counsel "what expertise does he have

3

on this machine?," defense counsel responded that he has been trained to use the Intoxilyzer 8000 and is familiar with the literature on these types of machines, in addition to his pharmacology and toxicology background.

**{9}** At least in the context of this case, the requirement of Rule 11-702 that the expert's testimony assist the trier of fact regarding an issue of fact is similar to the requirement of Rule 11-403 NMRA that the expert present relevant evidence. Indeed, Dr. Reyes' testimony would not assist the jury if his opinion were not relevant to a decision to be made by the jury. *See* Rule 11-401 NMRA (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). The district court ruled that Dr. Reyes' testimony would not be relevant because of state law that authorizes the use of an intoxilyzer machine.

**{10}** The Implied Consent Act provides that

> [a]ny person who operates a motor vehicle within this state shall be deemed to have given consent, subject to the provisions of the Implied Consent Act . . . , to chemical tests of his breath or blood or both, approved by the [SLD] pursuant to the provisions of [NMSA 1978, Section 24-1-22 (2003)] as determined by a law enforcement officer, or for the purpose of determining the drug or alcohol content of his blood if arrested for any offense arising out of the acts alleged to have been committed while the person was driving a motor vehicle while under the influence of an intoxicating liquor or drug.

Section 66-8-107(A). The SLD has adopted regulations concerning blood and breath testing under the Implied Consent Act. *See* 7.33.2.1 to 7.33.2.18 NMAC (4/30/10). The regulations include the selection and evaluation of breath alcohol testing instruments and equipment, certification of the instruments and equipment, certification of operators and key operators, and calibration of equipment. 7.33.2.9, 7.33.2.10 NMAC. Compliance with the SLD regulations intended to ensure accuracy is a predicate to admission in evidence of test results. *State v. Dedman*, 2004-NMSC-037, ¶ 13, 136 N.M. 561, 102 P.3d 628, *overruled on other grounds by State v. Bullcoming*, 2010-NMSC-007, 147 N.M 487, 226 P.3d 1; *see also State v. Gardner*, 1998-NMCA-160, ¶ 11, 126 N.M. 125, 967 P.2d 465 (holding that failure to comply with the SLD regulations concerning waiting period precludes admissibility of breath test results).

**{11}** In this case, we do not address the propriety of expert testimony to contest the foundational predicate of compliance with the SLD regulations. Rather, we address the viability of Dr. Reyes' testimony to contest the reliability of the results of the Intoxilyzer 8000 test after the results were received in evidence. *State v. Martinez*, 2007-NMSC-025, ¶ 24, 141 N.M. 713, 160 P.3d 894, suggests that such testimony may be admissible. In *Martinez*, our Supreme Court held that certification of a breathalyzer is a foundational requirement for the admission of the breath alcohol test result that could be demonstrated by

4

a preponderance of the evidence. *Id.* ¶ 23. The Court noted in *Martinez* that "once the [district] court determines that the [s]tate has met the foundational requirements for the admission of a BAT card, a defendant may successfully challenge the reliability of the breath test." *Id.* ¶ 24. However, the Court did not elaborate upon the types of challenge that it would deem acceptable.

**{12}** The approach advanced by the State would limit a defendant's challenge regarding the reliability of breath test results to evidence of "the machine's maintenance and operation[.]" By declining to permit Dr Reyes' testimony because he had not examined the machine used in this case, the district court adopted this approach. However, Defendant's proffer indicated that Dr. Reyes would testify concerning "pitfalls" that were common to all Intoxilyzer 8000 machines. If such "pitfalls" were to result in readings that were inaccurate, as Defendant proffered, they would be relevant to the reliability of the Intoxilyzer 8000 used to test Defendant. *See* Rule 11-401 (defining "relevant evidence" as "any tendency to make the existence of any" consequential fact more or less probable).

**{13}** Moreover, we do not believe that the Implied Consent Act restricts a defendant from challenging the reliability of an intoxilyzer by expert testimony after breath test results have been admitted in evidence. We reach this conclusion through our statutory review of the Implied Consent Act and Section 66-8-102(C), a review that we conduct de novo. *See State v. Tsosie*, 2011-NMCA-115, ¶ 13, 150 N.M. 754, 266 P.3d 34 (reviewing a question of statutory construction under a de novo standard).

**{14}** The State argued to the district court that the Legislature's adoption of the Implied Consent Act and the SLD regulations precludes a challenge to the reliability of an intoxilyzer because the Implied Consent Act and the SLD regulations embrace the reliability of the intoxilyzer provided the regulations have been followed. On appeal, the State argues that this Court has stated "[a] chemical test specified by statute may not be deemed unreliable as a matter of law." *Fugere v. State, Taxation & Revenue Dep't, Motor Vehicle Div.*, 120 N.M. 29, 35-36, 897 P.2d 216, 222-23 (Ct. App. 1995) (alteration in original) (internal quotation marks and citation omitted). We do not agree.

**{15}** As applicable to this case, Section 66-8-102(C)(1) proscribes driving with an alcohol concentration of eight one hundredths or more in one's breath. By virtue of the Implied Consent Act, the breath tests must conform to the SLD regulations in order to produce results that can be admitted into evidence. However, the language of Section 66-8-102(C)(1) does not otherwise connect the offense of per se DWI to the Implied Consent Act or the SLD regulations. To convict a defendant of the offense, the state must prove that the defendant drove in the relevant time period with a .08 or more alcohol concentration.

**{16}** The intoxilyzer reading, even though the machine has been approved by the SLD, and operated and maintained in accordance with the SLD regulations, is not conclusive evidence of the offense. Nor is it conclusive evidence of the reliability of the test results. Nothing in Section 66-8-102(C)(1), the Implied Consent Act, or the SLD regulations

5

indicates that the Legislature intended that the results produced by a machine approved by the SLD that has been operated and maintained in accordance with the SLD regulations is conclusively reliable. If the Legislature had intended such a result, it could have stated it with some degree of clarity. *See State v. Leiding*, 112 N.M. 143, 145-46, 812 P.2d 797, 799-800 (Ct. App. 1991) (holding that "in the absence of more precise or clearer statutory language[,]" this Court would not broadly construe a criminal statute to apply to conduct that was not specifically prohibited and that "legislative therapy, not judicial surgery" was required to make the conduct fall under the statute). Rather, we interpret the legislative language to mean, as suggested in *Martinez*, that when the state has provided the foundation that the SLD regulations pertaining to accuracy have been met, the intoxilyzer results may be received in evidence, subject to a defendant's challenge to their reliability. *Martinez*, 2007-NMSC-025, ¶ 24. Although the Implied Consent Act and the SLD regulations provide a road map for challenging some aspects of a machine's reliability, they do not limit Defendant's defense. For example, a defendant may contend that the reading was not reliable because of external factors such as the defendant's illness or ingestion of other substances. *See* 7.33.2.15(B)(2) NMAC (stating that a breath test shall not be administered unless the operator "has ascertained that the subject has not had anything to eat, drink or smoke for at least 20 minutes prior to collection of the first breath sample").

**{17}** *Fugere* does not affect our analysis. In *Fugere*, this Court held that, as a matter of law, a motorist cannot refuse a chemical breath test or blood test under the Implied Consent Act because he or she believes the test is not reliable. *Fugere*, 120 N.M. at 35-36, 897 P.2d at 222-23. By proffering Dr. Reyes' testimony, Defendant has not argued that the Intoxilyzer 8000 test is unreliable as a matter of law. His proffer demonstrates that he offered the testimony to contest the factual question of the reliability of the test produced by the Intoxilyzer 8000.

**{18}** The district court also decided that, under Rule 11-403, Dr. Reyes' testimony was either not probative, or, alternatively, its unfair prejudice to the State outweighed its probative value. Rule 11-403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury."

**{19}** The State argues on appeal that Dr. Reyes' testimony was not probative because (1) Dr. Reyes could not testify concerning the particular facts of the case in that Dr. Reyes neither examined the Intoxilyzer 8000 used to test Defendant nor Defendant in order "to determine whether Defendant himself was someone who did not have a partition coefficient of 2100:1" and further did not take a blood test; and (2) Dr. Reyes' testimony would have been inconsistent with the "accepted method of testing one's alcohol content" adopted by the SLD with legislative authority. As we have discussed, although the SLD regulations provide the basis for receiving test results in evidence, they do not preclude a defendant from challenging the reliability of the test results.

**{20}** As to the State's first argument, we agree that testimony concerning a blood test

6

would not be probative in this case because Defendant did not have one. We further agree that because Dr. Reyes did not examine Defendant, any testimony concerning Defendant's deviation from a partition coefficient of 2100:1 would not be admissible.[1] *See* NMSA 1978, § 66-8-110(F) (2007) (defining units of alcohol measurement to reflect a 2100:1 breath-blood ratio). However, we do not agree that Dr. Reyes' proffered testimony pertaining to "pitfalls" common to all Intoxilzyer 8000 machines that affected the accuracy of test results lacked probative value because Dr. Reyes did not examine Defendant or the particular machine used to test Defendant. Any reliability "pitfalls" based on the "structure, mechanisms, and workings" that are common to Intoxilyzer 8000 machines necessarily could impugn the reliability of every Intoxilyzer 8000 machine, including the Intoxilyzer 8000 used on Defendant. The scientific process of the Intoxilyzer 8000 is not beyond reproach. *See State v. Anaya*, 2012-NMCA-___, ¶ 22, ___ P.3d ___ (No. 30,675, June 7, 2012) ("If [d]efendant desires to put the statutorily accepted scientific process on trial, then he must do so by calling an expert witness to testify pursuant to Rule 11-702 NMRA and properly raise a foundational challenge to the SLD's scientific procedure for establishing the reliability of the [Intoxilyzer] 5000."). In this case, Defendant has initiated a proper foundational challenge to the reliability of the Intoxilyzer 8000 by providing an expert witness to testify about the scientific process and reliability of the machine. *Id.* ¶¶ 22, 25.

{21}     Moreover, we do not agree with the district court that unfair prejudice to the State outweighed the probative value of this testimony. The district court did not explain the nature of the unfair prejudice it found. The admission of evidence is not unfairly prejudicial simply because it damages a party's cause. *State v. Woodward*, 121 N.M. 1, 6, 908 P.2d 231, 236 (1995), *abrogated on other grounds as recognized by State v. Granillo-Macias*, 2008-NMCA-021, 143 N.M. 455, 176 P.3d 1187; *see State v. Anderson*, 118 N.M. 284, 302, 881 P.2d 29, 47 (1994) ("Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence[.]"). On appeal, the State does not assert that it would suffer any unfair prejudice. Rather, it contends that "[i]t would be misleading and confusing to the jury to allow an expert witness to testify to something that has already been decided by state law." Because we do not agree with the State that state law has decided the issue, we do not believe that the jury would be confused or misled by the only method for Defendant to challenge the scientific aspects of the Intoxilyzer 8000.

{22}     The rules of evidence do not support the district court's refusal to admit in evidence Dr. Reyes' expert testimony based on Defendant's proffer. The district court abused its discretion by declining to admit it.

**CONCLUSION**

---

[1] Defendant did not proffer a discussion of Defendant's partition coefficient as part of Dr. Reyes' testimony. The State appears to reference the partition coefficient based on Dr. Reyes' testimony in another case that was addressed in the district court.

**{23}** Defendant was entitled to present expert testimony challenging the reliability of the Intoxilyzer 8000, and the expert's failure to examine the machine in question did not preclude his testimony. We reverse Defendant's conviction and remand for a new trial. As a result, we do not reach Defendant's confrontation issue.

**{24}    IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for _State v. King_, No. 31,320**

**CONSTITUTIONAL LAW**
Confrontation

**CRIMINAL LAW**
Driving While Intoxicated

**CRIMINAL PROCEDURE**
Expert Witness
Implied Consent
New Trial

**EVIDENCE**
Blood/Breath Test
Expert Witness
Probative Value vs. Prejudicial Effect

**JUDGES**
Abuse of Discretion

**STATUTES**
Interpretation
Legislative Intent