**Certiorari Denied, July 29, 2016, S-1-SC-35987**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2016-NMCA-079**

**Filing Date:  June 29, 2016**

**Docket No. 34,298**

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellee,**

**v.**

**ANDREA MONTOYA,**

> **Defendant-Appellant.**

**and**

**Docket No. 34,319**

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellee,**

**v.**

**MICHAEL YAP,**

> **Defendant-Appellant.**

**APPEALS FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline Flores, District Judge (No. 34,298)**
**Brett R. Loveless, District Judge (No. 34,319)**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, N.M.

for Appellee

Bennett J. Baur, Chief Public Defender
Sergio J. Viscoli, Assistant Appellate Defender
Santa Fe, N.M.

for Appellant Montoya (34,298)

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, N.M.

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, N.M.
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, N.M.

for Appellant Yap (34,319)

## OPINION

**WECHSLER, Judge.**

**{1}**     In the interest of judicial economy, the Court is filing a consolidated opinion addressing two different appeals. Defendant Andrea Montoya and Defendant Michael Yap appeal their convictions for driving under the influence of intoxicating liquor or drugs (DWI), contrary to NMSA 1978, § 66-8-102 (2010). Both Defendants were represented by the same trial counsel and argue on appeal that, because no uncertainty computation was applied to their breath alcohol test (BAT) results, the results are unreliable such that admission into evidence at trial constituted an abuse of discretion. Because the substance of Defendants' admitted evidence does not affirmatively demonstrate a lack of reliability within our regulatory scheme for determining breath alcohol content (BAC), we conclude that the admission of Defendants' BAT results did not constitute an abuse of discretion. Montoya's additional argument related to improper admission is mooted by this conclusion. Yap additionally argues that (1) his BAT results were inadmissable under Rule 11-403 NMRA and (2) even if his BAT results were admissible, they provide insufficient evidence upon which to base a DWI conviction beyond a reasonable doubt. Yap has neither demonstrated that his BAT results are subject to exclusion under Rule 11-403, nor that his conviction was supported by insufficient evidence. Therefore, we affirm as to both Defendants.

## BACKGROUND

**Montoya**

2

**{2}** On May 19, 2012, Montoya was pulled over by an Albuquerque Police Department traffic officer for speeding. After approaching the vehicle, the officer observed that Montoya showed signs of intoxication. A DWI unit was dispatched to the location of the traffic stop. Upon arrival, Officer Peter Romero observed that Montoya had bloodshot, watery eyes, slurred speech, and an odor of alcohol emanating from her person. Montoya's performance on field sobriety tests indicated impairment. She was placed under arrest and transported for breath alcohol testing.

**{3}** Officer Romero conducted Montoya's BAT using the Intoxilyzer 8000 (IR 8000), which he was trained on and certified to operate. Officer Romero followed all pre-test protocol, including observation of a twenty-minute deprivation period. Montoya's first attempt to produce a breath sample was unsuccessful. On her second attempt, Officer Romero confirmed that the IR 8000 passed diagnostic checks and performed air blanks before and after each subject test. The calibration check was within the required range. Certification of the IR 8000 by the Scientific Laboratory Division of the New Mexico Department of Health (SLD) was current on the date of Montoya's breath test. Two separate breath tests resulted in readings of 0.11 and 0.10.

**{4}** Montoya filed a motion to suppress her BAT results in Bernalillo County Metropolitan Court. The motion asserted that the absence of uncertainty computations within the SLD regulatory scheme rendered the BAT results generated invalid for evidentiary purposes. Following testimony and argument on the motion, the metropolitan court ruled that Montoya's BAT results were sufficiently reliable to be admitted into evidence.

**{5}** Montoya was convicted in a bench trial on August 23, 2013. In its ruling from the bench, the metropolitan court found that substantial evidence existed to convict Montoya of per se DWI under Section 66-8-102(C), but not of operating a motor vehicle while impaired to the slightest degree under Section 66-8-102(A). The district court affirmed Montoya's conviction.

**Yap**

**{6}** On March 17, 2013, Yap was pulled over by an Albuquerque Police Department traffic officer for speeding and a headlamp violation. After approaching the vehicle, the officer observed that Yap showed signs of intoxication. A DWI unit was dispatched to the location of the traffic stop. Upon arrival, Albuquerque Police Officer John Sandoval observed that Yap had bloodshot, watery eyes and an odor of alcohol emanating from his person. Yap's performance on field sobriety tests indicated impairment. He was placed under arrest and transported for breath alcohol testing.

**{7}** Officer Sandoval conducted Yap's BAT using the IR 8000, on which he was trained and certified to operate. Officer Sandoval followed all pre-test protocol, including observation of the twenty-minute deprivation period. Officer Sandoval confirmed that the IR 8000 passed diagnostic checks and performed air blanks before and after each subject

test. The calibration check was within the required range. SLD's certification of the IR 8000 was current on the date of Yap's breath test. Two separate breath tests resulted in readings of 0.08.

{8}     Yap filed a motion to suppress his BAT results in Bernalillo County Metropolitan Court. The motion asserted that the absence of uncertainty computations within the SLD regulatory scheme rendered the BAT results generated invalid for evidentiary purposes. Following testimony and argument on the motion, the metropolitan court ruled that Yap's BAT results were admissible and that challenges to the reliability of the evidence pertained to the weight, not the admissibility, of the evidence.

{9}     Yap was convicted in a bench trial on December 16, 2013. In its ruling from the bench, the metropolitan court found that substantial evidence existed to convict Yap of either per se DWI, under Section 66-8-102(C), or of operating a motor vehicle while impaired to the slightest degree, under Section 66-8-102(A). The district court affirmed Yap's conviction.

## STANDARD OF REVIEW

{10}     We review a trial court's admission of evidence for an abuse of discretion. *State v. Jaramillo*, 2012-NMCA-029, ¶ 17, 272 P.3d 682. "A [trial] court abuses its discretion if its decision is obviously erroneous, arbitrary, or unwarranted[.]" *State v. King*, 2012-NMCA-119, ¶ 5, 291 P.3d 160 (internal quotation marks and citation omitted). To the extent that either Defendant's legal argument requires statutory interpretation, we apply de novo review. *State v. Lucero*, 2007-NMSC-041, ¶ 8, 142 N.M. 102, 163 P.3d 489.

## ADMISSIBILITY OF BAT RESULTS

{11}     In New Mexico, it is unlawful to operate a motor vehicle while under the influence of alcohol. Section 66-8-102. Section 66-8-102(C), commonly referred to as the "per se DWI statute," provides that a person violates the statute if his or her breath or blood contains an alcohol concentration of 0.08 or more. No additional indicia of impairment is required for a per se DWI conviction. *Bierner v. N.M. Taxation & Revenue Dep't*, 1992-NMCA-036, ¶ 6, 113 N.M. 696, 831 P.2d 995. A person may also be convicted of DWI without a BAT result of 0.08 or higher upon a determination that he or she was driving a vehicle while impaired to the slightest degree. *State v. Neal*, 2008-NMCA-008, ¶¶ 25, 27, 143 N.M. 341, 176 P.3d 330. Under the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2015), a person suspected of driving under the influence of alcohol is subject to SLD-approved chemical testing of his or her breath or blood. Section 66-8-107(A). Section 66-8-110(A) provides that "[t]he results of a test performed pursuant to the Implied Consent Act may be introduced into evidence" in criminal or civil cases.

{12}     The provision of Section 66-8-110(A) permitting the introduction of BAT results into evidence is not without limitation. Generally speaking, the question of whether a defendant's

4

BAT result is admissible "turns on each particular test and the officer's compliance with the SLD regulations[.]" *State v. Anaya*, 2012-NMCA-094, ¶ 20, 287 P.3d 956. SLD has promulgated breath alcohol testing regulations. *See* 7.33.2 NMAC (03/14/2001, as amended through 04/30/2010). Compliance with SLD regulations is a pre-condition for admissibility. *See State v. Dedman*, 2004-NMSC-037, ¶ 13, 136 N.M. 561, 102 P.3d 628 ("[I]f an accuracy-ensuring regulation is not satisfied, the result of the test in question may be deemed unreliable and excluded."), *overruled on other grounds by State v. Bullcoming*, 2010-NMSC-007, ¶ 16, 147 N.M. 487, 226 P.3d 1; *King*, 2012-NMCA-119, ¶ 10 ("Compliance with the SLD regulations intended to ensure accuracy is a predicate to admission in evidence of test results.").

**{13}** Unlike appeals arguing a lack of regulatory compliance, Defendants claim that their BAT results are inadmissible due to principles of uncertainty inherent to all systems of forensic measurement. As such, Defendants' arguments address the reliability of the regulatory scheme but in an area not contemplated by SLD in promulgating the regulations. *See* 7.33.2 NMAC (outlining breath alcohol testing requirements without reference to measurement uncertainty). Defendants claim that, in the absence of a confidence interval reflecting uncertainties in the breath alcohol testing process, their BAT results are not reliable enough to "assist the trier of fact" in their DWI prosecutions. *See State v. Alberico*, 1993-NMSC-047, ¶ 54, 116 N.M. 156, 861 P.2d 192 ("The proper inquiry under Rule [11-]702 [NMRA] is . . . whether the underlying scientific technique or method is reliable enough to prove what it purports to prove, that is probative, so that it will assist the trier of fact.").

**{14}** In *State v. Martinez*, 2007-NMSC-025, ¶ 17, 141 N.M. 713, 160 P.3d 894, our Supreme Court clarified that the admissibility of BAT results is determined by applying Rule 11-104(A) NMRA to the introduced evidence. *Martinez* did not foreclose future defendants from bringing reliability-based challenges to the admissibility of BAT results, discussing instead a defendant's opportunity to "critically challenge an officer's foundational testimony concerning certification [of the machine]." *Id.* ¶ 24. This Court reached a similar conclusion in *Anaya*, 2012-NMCA-094, ¶ 22, stating, "[i]f [a d]efendant desires to put the statutorily accepted scientific process on trial, then he must do so by calling an expert witness to testify pursuant to Rule 11-702 NMRA and properly raise a foundational challenge to the SLD's scientific procedure for establishing the reliability of the [machine]." Defendants have raised such challenges in these cases.[1]

**{15}** Unlike some jurisdictions, our appellate courts do not interpret the Implied Consent

---

[1]In its answer brief, the State argues without citation to legal authority that cross-examination of the State's expert witness by Yap was an insufficient mechanism to challenge the admissibility of BAT results as articulated in *Anaya*, 2012-NMCA-094, ¶ 22. "We will not address contentions not supported by argument and authority." *Murken v. Solv-Ex Corp.*, 2006-NMCA-064, ¶ 6, 139 N.M. 625, 136 P.3d 1035.

Act to establish an absolute presumption that regulatory compliance leads to reliable BAT results. *Compare King*, 2012-NMCA-119, ¶ 16 ("Nothing in . . . the Implied Consent Act, or the SLD regulations indicates that the Legislature intended that the results produced by a machine approved by the SLD that has been operated and maintained in accordance with the SLD regulations [are] conclusively reliable."), *with State v. Vega*, 465 N.E.2d 1303, 1307 (Ohio 1984) ("The judiciary must recognize the necessary legislative determination that breath tests, properly conducted, are reliable irrespective that not all experts wholly agree and that the common law foundational evidence has, for admissibility, been replaced by statute and rule[.]" (alteration, internal quotation marks, and citation omitted)). Nevertheless, this Court has expressly endorsed the reliability of breath alcohol testing systems. *See State v. Bearly*, 1991-NMCA-022, ¶ 13, 112 N.M. 50, 811 P.2d 83 ("[B]reath testing is generally regarded as highly reliable."). This endorsement is consistent with the principle that, absent "an affirmative showing that there is some reason to doubt the reliability of [accepted] science[,]" the state need not demonstrate reliability under Rule 11-702 as a condition for admissibility. *State v. Fuentes*, 2010-NMCA-027, ¶ 28, 147 N.M. 761, 228 P.3d 1181 (declining to require a reliability hearing into the science underlying ballistics evidence). The *Fuentes* analysis applies equally well to the instant cases. Breath alcohol testing is utilized and considered to be reliable throughout our country. As stated by one scholar,

> Breath alcohol analysis has largely become the standard analytical methodology employed in prosecuting drunk driving cases. Advancements in technology, immediate results, non-invasive protocol, improved understanding of respiratory dynamics, widespread legal acceptance among others, have all contributed to the increasing application and acceptance of forensic breath alcohol measurement.

R. G. Gullberg, *Methodology and Quality Assurance in Forensic Breath Alcohol Analysis*, 12 Forensic Sci. Rev. 46, 50 (2000); *see also* 1 Kenneth S. Broun et al., *McCormick on Evidence* § 205, at 1174 (7th ed. 2013) ("[V]arious instruments have been shown to be accurate in measuring [BAC] in laboratory studies, and arguments that particular instruments are not generally accepted or sufficiently accurate for the purpose of determining [BAC] usually fail."). More than sixty years ago, a Texas appellate court first determined that scientific testimony supported the admission of the defendant's BAT results. *McKay v. State*, 235 S.W.2d 173, 175 (Tex. Crim. App. 1950). Even the United States Supreme Court, in *California v. Trombetta*, endorsed the accuracy and reliability of breath alcohol testing systems. 467 U.S. 479, 489 (1984).

**{16}** Given the abundance of appellate case law endorsing the reliability of breath alcohol testing generally, a trial court is justified in presuming such reliability in the absence of an articulated challenge. *See State v. Onsurez*, 2002-NMCA-082, ¶ 10, 132 N.M. 485, 51 P.3d 528 ("The [s]tate need not independently prove the scientific reliability of the test as part of its prima facie case."). Whether Defendants' argument justifies further evaluation of the reliability of our regulatory scheme under Rule 11-702 turns on the standard articulated in *Fuentes*: whether Defendants' offered testimony and evidence "make an affirmative showing

that there is some reason to doubt the reliability" of BAT results generated through SLD-approved chemical testing. 2010-NMCA-027, ¶ 28.

## DEFENDANTS' UNCERTAINTY ARGUMENT

**{17}** What the inclusion of an uncertainty computation does, and does not, say about the reliability of a system of forensic measurement is central to our determination in this case. "Breath alcohol analysis results, like all measurements, possess uncertainty." R.G. Gullberg, *Common Legal Challenges and Responses in Forensic Breath Alcohol Determination*, 16 Forensic Sci. Rev. 92, 93 (2004). In the context of breath alcohol testing, uncertainty arises from factors that include biological and sampling considerations of the test subject, analytical and instrumental considerations of the system used, and traceability of the reference material. Rod G. Gullberg, *Estimating the Measurement Uncertainty in Forensic Breath-Alcohol Analysis*, 11 Accreditation and Quality Assurance 562, 563 (2006). In order to determine the uncertainty associated with a BAT result, these factors are quantified and calculated, a process that results in a combined uncertainty that is determined using standard statistical methods. *Id.* The outcome of this calculation is a range of possible results that, to a stated level of probability, includes the test subject's actual BAC somewhere along the range. *Id.* at 562. In essence, an uncertainty computation demonstrates the possibility that a test subject's actual BAC is higher or lower than the BAT result generated for evidentiary purposes. *Id.*

**{18}** At trial, Montoya introduced the following documents into evidence: National Research Council of the National Academies, *Strengthening Forensic Science in the United States: A Path Forward* (2009) (*Exhibit A*); ISO, *Guide 34: General Requirements for the Competence of Reference Material Producers* (3rd ed. 2009) (*Exhibit B*); ISO/IEC 17025, *General Requirements for the Competence of Testing and Calibration Laboratories* (2nd ed. 2005) (*Exhibit C*); ASCLD/LAB-International, *ASCLD/LAB Policy on Measurement Uncertainty* (2013) (*Exhibit D*); and ASCLD/LAB-International, *ASCLD/LAB Policy on Measurement Traceability* (2013) (*Exhibit E*) (collectively, *Exhibits A-E*). Montoya also introduced the testimony of Janine Arvizu, who was qualified as an expert in quality assurance and quality control.

**{19}** Yap's record on appeal does not include any documentary evidence.[2] He declined to call his own expert witness, but he elicited testimony related to uncertainty computations by cross-examining the State's expert witness, SLD toxicology bureau supervisor Jason Avery.

**{20}** With respect to evidence presented by Montoya, the ISO and ASCLD/LAB standards

---

[2]Audio recordings of the metropolitan court proceedings indicate that the same documents referred to herein as *Exhibits A-E* were admitted without objection at Yap's suppression hearing. For reasons that are unclear to this Court, these exhibits are not part of the appellate record.

referred to in *Exhibits A-E* and by the expert witness are not directly applicable to the SLD. However, this evidence indicates that the inclusion of an uncertainty computation increases confidence in a given measurement, particularly when that measurement is being compared to a pre-determined threshold level. *Exhibit A*, for example, presents a clear argument in favor of applying uncertainty computations to breath alcohol testing systems, stating,

> In addition to the inherent limitations of the measurement technique, a range of other factors may also be present and can affect the accuracy of laboratory analyses. Such factors may include deficiencies in the reference materials used in the analysis, equipment errors, environmental conditions that lie outside the range within which the method was validated, sample mix-ups and contamination, transcription errors, and more. . . . [If] the average [BAT result] is 0.09 percent and the standard deviation is 0.01 percent . . . a two-standard-deviation confidence interval (0.07 percent, 0.11 percent) has a high probability of containing the person's true blood-alcohol level.

*Exhibit A* at 117. The obvious inference to be drawn from *Exhibit A* is that a test subject who registered 0.09 could have an actual breath alcohol content of 0.07; a level that is below the per se limit for intoxication in New Mexico.

**{21}** The troubling feature of Montoya's admissibility argument is articulated by Arvizu in her testimony on cross-examination, which included the following exchange:

State:      So the essence of your testimony regarding the breath card in this case is that the result is incomplete and therefore invalid.

Arvizu:     The result is incomplete and therefore invalid for the purpose of comparing it to the threshold of 0.08.

. . . .

State:      Now would you say that all of [the results generated by the SLD regulatory scheme] are not valid and potentially misleading?

Arvizu:     You mean all of the results historically?

State:      Yes.

Arvizu:     Yes. Scientifically, without an uncertainty, the result is incomplete.

This conclusion highlights the deficiencies with the argument and evidence before this Court. In *State v. Johnson*, the defendant was arrested for DWI by an Aztec police officer.

2001-NMSC-001, ¶ 2, 130 N.M. 6, 15 P.3d 1233. The defendant's BAT results were 0.35 and 0.34—more than four times the legal limit. *Id.* Arvizu's testimony makes no distinction between this driver and Montoya, whose BAT results were 0.11 and 0.10.

**{22}** Because Arvizu's testimony does not apply an uncertainty computation to Montoya's BAT results or provide any indication of a point when SLD-approved chemical testing "becomes" reliable for evidentiary purposes, we must accept that her position is that SLD-approved chemical test results, regardless of the BAC reported, are never scientifically reliable. We cannot agree. Our Legislature has enacted a statute that prohibits operating a motor vehicle with a BAC of 0.08 or above. Section 66-8-102(C). Our Legislature has empowered the Department of Health to establish a system for calculating the BAC of suspected offenders. NMSA 1978, § 24-1-22 (2003). SLD has established a breath alcohol testing system that incorporates generally accepted technology and testing protocol. *See* Conforming Products List of Evidential Breath Alcohol Measurement Devices, 77 Fed. Reg. 35,747-01, 35,748 (June 14, 2012) (listing the IR 8000 as an approved device). Regardless of accepted scientific principles in the area of metrology, we do not believe that our entire breath alcohol testing system is not, and has never been, reliable with respect to any result generated.

**{23}** If we narrow Arvizu's conclusion by making the next logical leap, that, given the regulatory controls established by SLD, the breath alcohol testing system is reasonably accurate for scientific purposes, we are still left to draw arbitrary lines without an evidentiary record to support our determination. Neither the documents admitted into evidence nor Arvizu's testimony present any evidence as to how biological or sampling considerations specific to Montoya would contribute to an uncertainty computation in her particular case. Similarly, no evidence has been presented as to the manner in which instrumental considerations specific to the IR 8000 or the specific reference materials in question should be considered. Without this evidence, the question becomes whether an SLD-approved chemical test resulting in 0.09 is legally reliable or unreliable, and 0.10, and 0.11, and so on. Even were we to conclude from the evidence before us that results generated without an uncertainty computation are subject to a certain level of unreliability, such a conclusion does not result in a legal determination that all results generated within our regulatory scheme are so unreliable as to be inadmissible in every case.

**{24}** Yap's cross-examination of Avery provides even less support for the proposition that his BAT results are inadmissible. While Avery agreed that uncertainty computations function as described by defense counsel, at no point did Avery testify that SLD-approved chemical testing produces unreliable results. As discussed immediately above, such evidence does not support Defendants' legal argument.

**{25}** In *Fuentes*, the defendant failed to provide any support for his allegation that generally accepted principles underlying ballistics testimony and evidence lacked a sufficient scientific foundation to be admitted under Rule 11-702. *Fuentes*, 2010-NMCA-027, ¶ 27. We view the instant cases as scientifically analogous. By rejecting Arvizu's conclusion that

9

all current BAT evidence is scientifically unreliable, we note that Defendants have presented no other evidence indicating that their specific BAT results are unreliable. The exhibits admitted into evidence by Montoya largely discuss standards for laboratory certification that are inapplicable to SLD. While these standards may represent best practices in the field of metrology, we have no evidence before us concerning the manner in which they apply to field testing BAC in police stations across the state of New Mexico. Both *Exhibit A* and the expert testimony are only helpful for the purpose of weighing the evidence of whether a given BAT result is sufficiently accurate for the court or a jury to find an individual guilty of per se DWI beyond a reasonable doubt. But neither is sufficient to exclude evidence that is generated through a highly scrutinized, judicially endorsed, regulatory scheme.

**{26}** Additionally, our Supreme Court has previously discussed error rates in determining the admissibility of evidence. While error rate and uncertainty are not interchangeable terms, the legal implication—whether a scientific test result is fit for its particular evidentiary purpose—is similar. In *Lee v. Martinez*, our Supreme Court reviewed the accuracy rates of polygraph results, noting that, while "far from conclusive[,] . . . numerous studies have shown that polygraph tests can detect deception at rates well above chance." 2004-NMSC-027, ¶ 32, 136 N.M. 166, 96 P.3d 291. Instead of holding the polygraph results to be inadmissible, our Supreme Court held that deficiencies in calculating the rate of error "spoke to the weight of the evidence and not to its admissibility." *Id.* (alterations, internal quotation marks, and citation omitted).

**{27}** We reach the same conclusion in these cases. Defendants were entitled to present evidence, including expert testimony related to measurement uncertainty, to the finder of fact and make an argument that their BAT results should not support a finding of guilt beyond a reasonable doubt. But this inquiry regarding the weight to be given to expert testimony is a separate one from whether Defendants' evidence constituted an "affirmative showing that there is some reason to doubt the reliability of [accepted] science[,]" such that their SLD-approved chemical test results are inadmissible. *Fuentes*, 2010-NMCA-027, ¶ 28. We also note that our conclusion is consistent with relevant literature reviewed by this Court. For example, in *Estimating the Measurement Uncertainty in Forensic Blood Alcohol Analysis*, the author does not advocate that the absence of an uncertainty computation renders a test result inadmissible. Instead, he states that "[a]n appropriate uncertainty computation . . . would be relevant *for the trier of fact* to make an informed decision." Rod G. Gullberg, *Estimating the Measurement Uncertainty in Forensic Blood Alcohol Analysis*, 36 Journal of Analytical Toxicology 153, 153 (2012) (emphasis added).

**{28}** Nothing in this opinion should be construed as a statement by this Court that additional legal argument in the area of metrology is foreclosed. We recognize the valid concern expressed in the scientific literature and by Arvizu that BAT results, particularly those exactly at the per se limit, can present a reliability problem when attempting to scientifically prove guilt beyond a reasonable doubt. *See* UJI 14-5060 NMRA ("A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act in the graver and more important affairs of

10

life."). This question, however, is for the finder of fact. *See Lee*, 2004-NMSC-027, ¶ 16 ("Given the capabilities of jurors and the liberal thrust of the rules of evidence, we believe any doubt regarding the admissibility of scientific evidence should be resolved in favor of admission, rather than exclusion.").

## APPLICATION OF RULE 11-403

**{29}** Rule 11-403 states, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." While *Alberico* contemplates the possibility of a Rule 11-403 challenge to expert testimony, we are unclear how the rule would be properly applied in this case. *See Alberico*, 1993-NMSC-047, ¶ 35 n.5 ("After the expert opinion testimony is deemed admissible under Rule [11-]702, perhaps then a consideration of possible deference could be made under a Rule [11-]403 analysis of whether the probative value of the evidence might be substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury[.]" (internal quotation marks and citation omitted)).

**{30}** Yap's argument on appeal, essentially, is that BAT results that are generated without an uncertainty computation are potentially misleading to the finder of fact.[3] As stated in his brief in chief, "the value '[0].08' merely distracts the finder of fact from understanding that the actual value could be *any* number." Scientific evidence, once admitted, can carry with it an "aura of infallibility[.]" *State v. Anderson*, 1994-NMSC-089, ¶ 63, 118 N.M. 284, 881 P.2d 29. Were we convinced that Yap's BAT results could actually be "any number" as he asserts, the proper conclusion would be exclusion. As previously discussed, however, the testimony elicited in support of Yap's legal argument does not cause us to doubt the generally accepted science underlying breath alcohol testing. *See Bearly*, 1991-NMCA-022, ¶ 13 ("[B]reath testing is generally regarded as highly reliable."). Therefore, the danger of misleading the finder of fact did not substantially outweigh the probative value of Yap's BAT results such that admission constituted an abuse of discretion. *See State v. Chamberlain*, 1991-NMSC-094, ¶ 9, 112 N.M. 723, 819 P.2d 673 ("The trial court is vested with great discretion in applying Rule [11-]403, and it will not be reversed absent an abuse of that discretion."); *see also State v. Pickett*, 2009-NMCA-077, ¶ 13, 146 N.M. 655, 213 P.3d 805 (holding that application of Rule 11-403 was unnecessary in a bench trial).

## SUFFICIENCY OF THE EVIDENCE

---

[3]Yap's appellate briefing does not specifically raise any of the considerations contemplated by Rule 11-403. We discuss the potential for misleading the jury given our previous conclusion as to the reliability of BAT results generated by SLD-approved chemical testing. We decline to independently investigate if, or how, any of the other considerations raised in Rule 11-403 could apply to this or a similar case.

11

**{31}** Yap's final argument relates to the sufficiency of his BAT results to support a conviction for either per se DWI or driving while impaired to the slightest degree. Section 66-8-102(C); *Neal*, 2008-NMCA-008, ¶ 25. We address these arguments in turn.

**Per Se DWI**

**{32}** Yap's post-admission sufficiency of the evidence argument mirrors his pre-admission reliability argument—that uncertainty inherent to all systems of forensic measurement renders his BAT results insufficiently reliable to support a per se DWI conviction beyond a reasonable doubt. On cross-examination during Yap's October 15, 2013 motion hearing, Avery implied that SLD generated BAT results are subject to measurement uncertainty.[4] Finding this testimony to be credible, we must conclude that the scientifically appropriate way to view Yap's BAT results is 0.08 plus or minus the range represented by the unknown uncertainty computation.

**{33}** As a general rule, "in reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. The evidence shows that an SLD-approved chemical test result generated without an uncertainty computation does not accurately portray the possibility that a test subject's actual BAC is different from the BAT result. However, taking the viewpoint that the actual BAC was lower, instead of equal to or higher, than 0.08 would not constitute "view[ing] the evidence in the light most favorable to the guilty verdict,"—a standard that binds our determinations in sufficiency of the evidence analysis. *Id.* As an alternative, we consider whether our Legislature intended that such a possibility be a bar to certain per se DWI convictions. We decline to draw such a conclusion.

**{34}** Yap's BAT resulted in two readings of 0.08. In 1993, our Legislature unambiguously amended the then existing law for the purpose of establishing 0.08 as the breath and blood concentration at which a driver may not operate a motor vehicle in the state of New Mexico. 1993 N.M. Laws, ch. 66, § 7. We have no reason to believe that this legislative determination did not include consideration of measurement uncertainty in selecting 0.08 as

---

[4]Because this was a bench trial, it appears that the parties agreed to incorporate the substance of Yap's October 15, 2013 motion hearing into his December 16, 2013 trial. The apparent result of this agreement was that Yap did not call an expert witness at trial to dispute the reliability of his admitted BAT results. Because of the absence of expert testimony at trial, a plausible argument exists that Yap failed to challenge the weight of the evidence against him as discussed by the metropolitan court. However, the audio transcript of the December 16, 2013 trial makes clear that the metropolitan court relied on testimony and evidence from the October 15, 2013 motion hearing in determining that Yap's admitted BAT results were sufficiently reliable enough to support a conviction of per se DWI.

12

the legal limit rather than, for example 0.07 or 0.09. For this Court to conclude that an SLD-approved chemical test result of 0.08 is legally insufficient to support a guilty verdict would defy the clear legislative intent embodied within Section 66-8-102. *See Bank of N.Y. v. Romero*, 2014-NMSC-007, ¶ 40, 320 P.3d 1 ("When a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (alteration, internal quotation marks, and citation omitted)). This is not to say that a finder of fact presented with evidence of measurement uncertainty would be unjustified in concluding that SLD-approved chemical test results of 0.08 did not support a finding of guilt beyond a reasonable doubt in any given per se DWI case. Rather, we simply conclude that SLD-approved chemical test results of 0.08 or higher are sufficient on appeal to support such a conviction.

**Driving While Impaired to the Slightest Degree**

{35}    Finally, Yap argues that if his BAT results were improperly admitted, it was error to consider those results in determining impairment to the slightest degree. While this argument conforms with precedent case law, our ruling as to admissibility moots its viability. *See Pickett*, 2009-NMCA-077, ¶¶ 14-15 (holding that BAT results are relevant to a finding of driving while impaired to the slightest degree).

**CONCLUSION**

{36}    As to both Defendants, because the admitted evidence and expert testimony fail to undermine the accepted science underlying the SLD-approved chemical testing scheme, the admission of Defendants' BAT results was not "obviously erroneous, arbitrary, or unwarranted" and did not constitute an abuse of discretion. *King*, 2012-NMCA-119, ¶ 5 (alteration, internal quotation marks, and citation omitted). We therefore affirm Montoya's conviction for DWI contrary to Section 66-8-102(C). With respect to Yap's additional legal arguments, he has neither demonstrated that his BAT results are subject to exclusion under Rule 11-403 nor that insufficient evidence supported his conviction. We therefore affirm Yap's conviction for DWI under either Section 66-8-102(C) or Section 66-8-102(A) as articulated by the metropolitan court.

{37}    **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

_____

**M. MONICA ZAMORA, Judge**